**Church of God of Decatur, Illinois et al., Plaintiffs-Appellees, v. W. G. Finney et al., Defendants-Appellants.**

**Gen. No. 9,807.**

Opinion filed November 6, 1951.
Released for publication December 3, 1951.

FRANCIS R. WILEY, CHARLES I. DERR, and J. G. ALLEN, all of Decatur, for appellants.

JAMES S. BALDWIN, and JOHN W. EVANS, both of Decatur, for appellees.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Macon county based on the recommendations of a master, which made permanent a temporary injunction issued against defendants.

The plaintiffs, the Church of God of Decatur, Illinois, a religious corporation, Vernon Spaar, Orville Spencer, and Willard Hake, as Trustees, as individuals

and as members of the church, and seven other members of the congregation on behalf of all other members of the congregation similarly situated brought this action to enjoin the defendants, W. G. Finney and his wife as pastor and associate pastor, from serving as such, from controlling church property and participating in the business and affairs of the congregation, and also to restrain them and their sixteen co-defendants from interfering with the plaintiff trustees in the possession, control and management of church property.

The gist of the complaint is that the by-laws of the Church of God of Decatur, a local church of the Church of God, which has national offices at Anderson, Indiana, provide that the doctrines and practices of the church are to be in harmony with the standard of God's Word held by the General Ministerial Assembly of the Church of God; that in November 1949, the Illinois State Ministerial Assembly of the Church disfellowshipped Finney; that, under the customs of the Illinois Ministerial Assembly, a church having a minister who is not in good standing is out of fellowship with the General Ministerial Assembly; that thereafter Finney continued to act as pastor and, with the other defendants, organized a congregation not in fellowship and doctrinal unity with the General Ministerial Assembly; and that the defendants have denied the individual plaintiffs and all other members of the congregation similarly situated the right to worship in the church building in accordance with the usages of the Church of God and the right to have a minister in fellowship with the General Ministerial Assembly.

In addition, there were allegations as to the real property belonging to the church and which had been conveyed to the plaintiff trustees for church use so long as the local church maintained doctrinal unity with the General Ministerial Assembly; if the prop-

erty falls into disuse, or, if, in the opinion of the General Ministerial Assembly, the local church is no longer in unity with the Church of God, as represented by the General Ministerial Assembly, the property shall vest in fee simple in the Board of Church Extension and Home Missions of the Church of God, Anderson, Indiana.

Defendants, answering, denied that the original by-laws were in force and effect or that plaintiffs Spaar, Spencer and Hake were still trustees of the church and averred that the Illinois Ministerial Assembly had no authority to disfellowship Finney; that the original by-laws were revoked and plaintiff trustees were removed in December 1949; that the new by-laws omitted all reference to the standard of God's Word held by the General Ministerial Assembly; and that new trustees had been selected to replace the plaintiff trustees. Further allegations were made to the effect that the property was that of the new church and that any restrictions placed in the deeds were void for remoteness and uncertainty.

The master found, and his recommendations were adopted by the court in its decree, that the corporate plaintiff had been in existence since 1916 under by-laws which provided that the doctrines, customs and practices of the church are expected to harmonize with the standard of God's Word held by the General Ministerial Assembly of the Church of God; that under the by-laws the trustees were empowered to conduct the business of the church; that the by-laws provide that the pastor could call a meeting of the congregation at which only voting members were to be allowed in the voting section.

The master further found that the deeds were in substance and form as alleged in the complaint; that the General Ministerial Assembly is comprised of all ordained ministers of the Church of God in good and

regular standing who are present at the regular meeting of the Assembly; that the constitution of the General Ministerial Assembly provides that its purpose is to determine general policies for the conduct of the general business of the church and to promote the work of the church; that, according to its constitution, the General Ministerial Assembly shall be regarded as a voluntary association of ministers meeting for counsel but without the power to exercise ecclesiastical jurisdiction over the church or individual congregation in general.

The master also reported that the Illinois State Ministerial Assembly is comprised of all ordained ministers of the Church of God in good and regular standing, and that its constitution provided that its purpose was to determine the general policies to be followed in promotional work and to conduct such other business as the needs of state work might require; that the constitution also provided that the State Ministerial Assembly shall be regarded as a voluntary association meeting for counsel and having no ecclesiastical authority but retaining the right to define its own membership and to declare when individual ministers and congregations are not recognized by the Assembly as adhering to the general principles to which the Assembly is committed.

Further reporting on the church organization, the master found that similar language was contained in the constitution of the Central Illinois Ministerial Assembly.

The master also found that in the Church of God there is no final ecclesiastical authority, each congregation being autonomous; that in the exercise of its powers expressed in its constitution the Illinois State Ministerial Assembly on November 16, 1949, disfellowshipped Finney and, because Finney did not appeal to the General Ministerial Assembly he is regarded as

being out of fellowship with it; that after Finney was disfellowshipped, he called a meeting of the congregation for the purpose of revoking the old by-laws and the passing of new, and the vacation of all offices of the church except that of pastor; that at said meeting Finney restricted the voting to only those members of the congregation who followed him and prevented all others from casting their vote; and, in fact, did not call for contrary votes; that the new by-laws adopted at this meeting no longer provided for the harmonization of the doctrines, customs and practices with the standard of God's Word held by the General Ministerial Assembly, but were changed to provide: "These doctrines and customs and practices are expected to harmonize with the Word of God."

The master found the equities to be with the plaintiffs declaring that the meeting held upon the call of Finney was not an ecclesiastical matter and was not conducted according to law or to the by-laws of the church; that the rights of the individual members of the church were infringed in that they were not all given the opportunity to vote on any proposition at the meeting called by Finney; that some were denied the right to speak at said meeting; that the new by-laws were not passed by three quarters vote of the membership as required by the by-laws in effect at said meeting; and that the proposed by-laws were not read publicly as required by the by-laws then in force.

The master reasoned that the actions of the defendants amounted to a disassociation of Finney and his followers from the Church of God and the standards of its General Ministerial Assembly.

The defendants urge that the sole question in this cause is the determination who shall be pastor of the Church of God of Decatur, Illinois. In support of the theory that the pastor shall be the defendant Finney, they argue questions of fact relating to the propriety

of the disfellowshipping of Finney, the sufficiency of the evidence with regard to the actions incidental to the bringing of this suit, the sufficiency of the evidence as a whole to support the decree, and the failure of the master and the lower court to give full effect to the witnesses for defendants as opposed to the witnesses for the plaintiffs.

In addition to the questions of fact they argue questions of law regarding the right of the congregation of the Church of God to determine its own future, the question of the power of the church organization in defeating the tenure of the defendants Finney, the powers of the court, and finally urge upon us that in the final analysis, this is an ecclesiastical matter and not properly before us.

■■■ We have examined the record and have found evidence sufficient to support the findings of the master on questions of fact, which findings were adopted by the court. Where the master has made findings of fact which have a basis in the evidence, and the master is affirmed by the court, it is not our province to, nor would we be justified in reversing the decree on the grounds of sufficiency of the evidence. In such circumstances we must accept the factual situation determined by the master who saw the witnesses and heard the evidence.

While the determination as to pastorship is incidental to the decision in this case, the issues presented here go beyond the determination of that question. We have here two contesting factions each of which asserts its right to be named as the true church. This determination will settle for once and for all the rights as to the real property involved and the rights of the individuals to maintain, manage and use that property in the interests of the Church of God. We also have facing us the problem of determining the legality of reservations in the deeds to the church property which,

604

in certain decisions, might cause a gift over of the property to the Board of Church Extension and Home Mission.

The defendants have filed a long and extensive brief arguing, in essence, that the plaintiffs are the dissenters from the church and that they are the only true church. The cases they cite in support of this view, however, are not in point with the facts before us. As noted by plaintiffs, the cases cited have to do with congregations which are separate and apart from any church of national, or, at least, of a general religious organization, or have to do with local churches having no close connection with the parent church. Since 1916, the date of its founding, the Church of God, Decatur, Illinois, has had a very real and close connection with the Church of God, Anderson, Indiana. Its tenets have been part and parcel of the teachings of the mother church and its organization. For those years it has participated in the activities of the Assemblies of that church and for those years its by-laws and constitution have provided that its customs and practices would harmonize with the standard of God's Word held by the General Ministerial Assembly of the parent church.

When the defendants gathered to pass new by-laws, it is significant that they deleted from the new governing rules all reference to the parent church and its organization. In short, where prior to these actions and prior to the date on which the defendants, with Finney were disfellowshipped, the congregation was in entire unity and operating under the organization of the parent church, thereafter the defendants completely divorced themselves from the slightest reference to such affiliation. It must be noted that in each case cited by the defendants the decisions turned on the question of church organization and the allegiance owed to the parent church. *Honey Creek Regular Bap-*

*tist Church v. Wilson* (Ohio), 92 N. E. (2d) 419. Here, even the deeds to church property provided for gift over to the Board of Extension of the parent church should the property cease to be used for church purposes or should the standards of the church deviate from those of the General Ministerial Assembly. The defendants apparently recognized this connection with the parent church, as the new by-laws promulgated by them deleted all reference to such standards.

In *Kuns v. Robertson,* 154 Ill. 394, our Supreme Court pointed out that those who withdraw from a church, even though they be, in theological belief and religious observances, identical with the body from which they withdraw, are ecclesiastically distinct, as a result of their own acts, and have no right to the church property. The title to the church follows the lawful congregation.

It is not necessary to discuss the questions pertaining to the meetings whereby the defendants Finney became disfellowshipped. The events occurring after those meetings have removed the defendants from the teachings and standards of the parent church and they, by their own actions and words as represented by the new by-laws, have divorced themselves from the true congregation. To say they are the true church is to hold that the years of conformance and adherence to the standards set by the General Ministerial Assembly is to have no meaning, and to approve a series of acts whereby defendants would be allowed to set themselves up as judges of their own actions and to acquire property reserved for a congregation in fellowship with the parent church, even though defendants have completely disavowed the necessity for conforming to such standards. As to the actions of the church assemblies in disfellowshipping Finney, we need only point out that Finney had participated in these organizations and had thereby acquiesced in

606

actions which were proper according to the respective constitutions of these groups. As was said in *Chase v. Cheney,* 58 Ill. 509, "The minister, in a legal point of view, is a voluntary member of the association to which he belongs. The position is not forced upon him, he seeks it. He accepts it, with all its burdens and consequences; with all the rules and laws, and canons then subsisting, or to be made by competent authority; and can, at pleasure and with impunity, abandon it."

██ The evidence in this case is clear that the situation before us is one of a division or schism in the church. It presents the question of which of the two bodies is to control the church property and manage its affairs. By their own words the defendants have departed from doctrines which have been part of the church's teachings for 35 years. In *Watson v. Jones,* 80 U. S. 506; 20 L. Ed. 666 (Ky.), the court uttered language which we deem determinative of the question as to which group is properly the congregation of the Church of God. There it was said "So long as there are persons qualified within the meaning of the original dedication, and who are also willing to teach the doctrines or principles prescribed in the act of dedication, and so long as there is anyone so interested in the execution of the trust as to have a standing in court, it must be that they can prevent the diversion of the property or fund to other and different uses. This is the general doctrine of courts of equity as to charities, and it seems equally applicable to ecclesiastical matters."

Because of our views on the schism in the church it is unnecessary to consider the validity of the gift over in the deeds. The property must remain in the hands of the plaintiffs who are the true congregation.

It is obvious that defendants have spent much time on an involved and lengthy brief. To discuss the many arguments and cases cited in detail would result in

no other decision and would only unnecessarily lengthen this opinion. We have given careful consideration to both the cases and arguments of the defendants and find them without merit. We are aware that in matters of religion, feelings run high. However, in this situation we can only apply the law as we find it to the facts as they appear.

The decree of the circuit court of Macon county is affirmed.

*Affirmed.*