102 So.2d 714 (1958)
ST. JOHN'S PRESBYTERY, a corporation, et al., acting as the Session of Central Presbyterian Church of St. Petersburg, Appellants,
v.
CENTRAL PRESBYTERIAN CHURCH OF ST. PETERSBURG, a corporation, et al., claiming to be the Board of Directors of Central Presbyterian Church of St. Petersburg; Union Trust Company of St. Petersburg, a banking corporation under the laws of Florida, and Robert J. McCutcheon, Jr., as Trustee of the H.H. and Harriet Victory Trust, all of Pinellas County, Appellees.
Supreme Court of Florida.
May 9, 1958.
Rehearing Denied June 5, 1958.
*715 Wm. C. McLean, Tampa, for appellants.
Byron T. Sauls of Fisher & Sauls, St. Petersburg, for appellees.
TERRELL, Chief Justice.
Since this litigation revolves around the judicatories of the Presbyterian Church and the manner in which they function, when a schism in the local church arises an introduction to them would be a helpful entree to the question presented. Described in ascending series the church judicatories include the Session of the local church, the Presbytery, the Synod and the General Assembly which is the Supreme Court of the church. Each judicatory has a responsibility to the one above it. St. John's Presbytery instituted this suit against Central Presbyterian Church of St. Petersburg and First Presbyterian Church of St. Petersburg. West Central Presbyterian Church and Trustee of the Will of H.H. and Harriet Victory are named in the litigation.
The bill of complaint prays (1) that defendants be enjoined from interfering with the plaintiffs in the use, sale or encumbrance of the real or personal property of Central Presbyterian Church of St. Petersburg, hereinafter referred to as Central Church, or (2) from paying or delivering to any person or corporation any money, funds or other property constituting the property of Central Church, except to such persons, firms or corporations as may be lawfully designated. There was an answer, a motion to dismiss and an amended complaint. Testimony was taken and at final hearing the chancellor found:
(1) During the year 1953, defendant, Central Church, withdrew from the Presbyterian Church in the United States (Southern), hereinafter referred to as Presbyterian Church. It is shown that Central Church was organized or established by the First Presbyterian Church of St. Petersburg and received financial assistance from it; that the original deed of conveyance was made to the "Trustees of the West Central Presbyterian Church and their successors." The church was later incorporated under the laws of Florida and title to the realty was conveyed to "Central Presbyterian Church of St. Petersburg, Florida, a corporation."
(2) The chancellor further found that none of these deeds created a trust but were absolute conveyances to the grantees named, the first grantee being Central Church, a corporation; that the will of H.H. and Harriet Victory, deceased, directs their trustees to pay over the balance remaining after certain bequests are paid to certain beneficiaries including "Central Presbyterian Church of St. Petersburg."
(3) The chancellor also found the contention of plaintiffs to be that the Statute of Frauds, §§ 689.05 and 689.06, Florida Statutes, F.S.A., does not forbid the creation of an implied or constructive trust in favor of St. John's Presbytery for the benefit of those church members who remain steadfast in the faith and discipline of the Presbyterian Church.
(4) The chancellor then found that the government of the Presbyterian Church in the United States (Southern) was different from that of the Presbyterian Church in the United States of America (Northern), in that the latter church owns and controls the property of the member churches by authority of its Constitution, Ch. 27, Paragraphs 9 and 10, Constitution of the Presbyterian Church of the United States of America (Northern), while as to the Presbyterian Church of the United States *716 (Southern) the member churches comprising the parent organization are congregational in government, each having the right to control its own property. Book of Church Order, Paragraph 163.
(5) Pursuant to these findings, the chancellor concluded that the withdrawal of Central Church from the Presbyterian Church was proper and regular; that the deeds of conveyance under which defendant claims are absolute and convey a fee simple title to Central Church; that they create no trust for the benefit of the plaintiff; that the will of H.H. and Harriet Victory conveys trust funds directly and absolutely to the defendant church and that such funds are not held in trust for the use and benefit of the plaintiffs; that the government of the Presbyterian Church as defined in the Book of Church Order contains no reference to any jurisdiction of the Presbytery or other church courts over property owned by any individual church, but limits their jurisdiction to matters of a moral or spiritual nature; that defendant church continues to adhere to the fundamental principles of Christianity and has not directed any of its property to a use fundamentally different from that contemplated in its acquisition.
On the basis of these findings, the chancellor decreed the equities to be with defendants and denied the prayer for relief on the part of plaintiffs. He supported his decree with Reid v. Barry, 93 Fla. 849, 112 So. 846; Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666, and Partin v. Tucker, 126 Fla. 817, 172 So. 89, and passages from the Book of Church Order heretofore adverted to. We are confronted with an appeal from the final decree so entered.
The sole point for determination may be stated as follows: Is the majority who voted to and withdrew its affiliation from Central Church or the minority who continued faithful thereto entitled to ownership of the church property?
The chancellor decreed that since the churches which comprise the Presbyterian Church were congregational in government and that a majority could withdraw its affiliation with the parent church, that such majority constituted the true representative or successor to the Central Presbyterian and that since the deed conveying the property to the church was absolute on its face, no implied or constructive trust could arise in favor of St. John's Presbytery for the benefit of church members who remained faithful to the discipline of the Presbyterian Church.
In so holding we think the chancellor was in error. The admissions in the answer and the evidence without contradiction show that the Presbyterian churches in the United States are not congregational in government but are representative, they are governed by an ascending series of judicatories known as the session, the presbytery, the synod and the general assembly, which is governed by a constitution and an ecclesiastical code giving it legislative, executive and judicial powers. Questions of usage, custom or practice relating to the local church or its members are governed by these judicatories and each is bound to the other by church or ecclesiastical law.
The record shows that by such authority the property in question is not expressly devoted to the support of any religious cult but it was conveyed to the "Trustees of West Central Presbyterian Church and their successors in office" and was later conveyed by the grantees to a non-profit religious body incorporated as "Central Presbyterian Church of St. Petersburg," the charter of which provides that membership therein shall be governed by the Book of Church Order of the Presbyterian Church. The Book of Church Order further provides for management of the affairs of the church or the corporation which could be rescinded or modified only by the Presbytery of the Presbyterian Church in the United States.
These facts are important because they are not controverted and when taken in connection with other facts admitted by the pleadings and not controverted by the evidence *717 on any material point, we think they conclude the question of whether or not an implied trust in the property of Central Church for the promulgation of the doctrines of the Presbyterian Church was created. Proper application of the law to these facts also concludes the question of whether the majority who voted to withdraw from the Presbyterian Church or the minority who remained loyal to it are entitled to the church property. It is admitted that the motion to withdraw was carried by a vote of 110 to 26. Many other factual aspects of this case, particularly those which have to do with the Book of Church Order and those which are controlled by it are admitted or are not controverted but are not discussed at this time.
So much for the organization, history and judicatories of the Presbyterian Church. Appellees contended that jurisdiction of the judicatories was limited to spiritual matters and had no relation whatever to the property of the local church. The leading case on the point in the country is Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666. In that case the court was confronted with a situation very similar to the one we have here. The religious congregation holding the property was a subordinate unit of the general church organization composed of superior ecclesiastical tribunals with ultimate power in a supreme judicatory over the entire church. Same as that presented in this case. Among other things, the court said:
"In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority, is, that, whenever the questions of discipline or of faith, or ecclesiastical rule, custom or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and binding on them, in their application to the case before them."
Commenting as to church property in the last cited case, the court said:
"When the property held by the church is that purchased or conveyed for the general use of the religious congregation, not devoted forever by the instrument which conveyed it nor by any specific declaration of its power to the support of any special religious dogmas, or any peculiar form of worship, it is and remains the property of the general church which exercises such general and ultimate power of control. It does not belong to the presbytery or the synod, nor, in a strict sense, to the general assembly. It belongs to the church which is composed of its entire membership; that membership being governed and controlled by the organic law of the church, the administration of which is lodged in certain judicatories arising in regular succession, to the general assembly or court of last resort, embracing in itself legislative, administrative and judicial powers."
The doctrine of Watson v. Jones, supra, has been repeatedly affirmed by the Supreme Court of the United States. In Shepard v. Barkley, 247 U.S. 1, 38 S.Ct. 422, 62 L.Ed. 939, 946, 947, it was in part said:
"* * * the court is of opinion that the doctrines by which the case is controlled have been so affirmatively and conclusively settled by a prior decision of this court as to cause it to be unnecessary as a matter of original consideration to restate them. Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666. And the want of any possible reason for removing this case from the control of the doctrines of the Watson Case is, if needs be, conclusively shown by the many cases referred to by the court below in its opinion (8 Cir., 222 F. 669, 138 C.C.A. 217), in which the Watson *718 Case was made controlling and decisive as to controversies not in substance differing from the one here presented."
This court was confronted with the same question in First Born Church of the Living God v. The First Born Church of the Living God, 156 Fla. 78, 22 So.2d 452, and in Full Gospel Temple of Tallahassee v. Redd, Fla., 82 So.2d 589, 590. In the latter case we said:
"When appellants withdrew from the parent church and organized themselves into The Full Gospel Temple, they carried nothing but their membership with them; the parent church retained title to the property. In this case there was no consideration for the deed to The Full Gospel Temple, neither is there any theory whatever under the law by which appellants could withdraw from the parent church and carry its estate with them."
The doctrine of these cases is supported by the following: Mitchell v. Church of Christ at Mount Olive, 221 Ala. 315, 128 So. 781, 70 A.L.R. 71; Baptist City Mission Society of Denver v. People's Tabernacle Congregational Church of Denver, 64 Colo. 574, 174 P. 1118, 8 A.L.R. 102, 54 C.J. 71; 76 C.J.S. Religious Societies § 68; Barkley v. Hayes, D.C., 208 F. 319, 322-323, affirmed in 8 Cir., 222 F. 669; Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 334 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120; Montgomery v. Carlton, 99 Fla. 152, 126 So. 135; First Free Will Baptist Church of Blountstown v. Franklin, 148 Fla. 277, 4 So.2d 390; Trustees of Pencader Presbyterian Church in Pencader Hundred v. Gibson, 26 Del. Ch. 375, 22 A.2d 782; Bouchelle v. Trustees of Presbyterian Congregation at Head of Christiana in New Castle County, 22 Del. Ch. 58, 194 A. 100; Presbytery of Bismarck v. Allen, 74 N.D. 400, 22 N.W.2d 265; Church of God at Markleysburg v. Church of God at Markleysburg, 355 Pa. 478, 50 A.2d 357; Church of God of Decatur v. Finney, 344 Ill. App. 598, 101 N.E.2d 856; Fuchs v. Meisel, 102 Mich. 357, 60 N.W. 773, 32 L.R.A. 92; Mack v. Kime, 129 Ga. 1-23, 58 S.E. 184, 24 L.R.A., N.S., 675; Schlichter v. Keiter, 156 Pa. 119, 27 A. 45, 22 L.R.A. 161; Clay v. Crawford, 298 Ky. 654, 183 S.W.2d 797; 45 Am.Jur. 777, § 68; Gaff v. Greer, 88 Ind. 122, 45 Am.Rep. 449; Poynter v. Phelps, 129 Ky. 381, 111 S.W. 699, 24 L.R.A., N.S., 729; Wilson v. Johns Island Presbyterian Church, 2 Rich.Eq. 192, 19 S.C. 192; Trustees of Presbytery of Jersey City v. Trustees of First Presbyterian Church of Weehawken, 80 N.J.L. 572, 78 A. 207; Reid v. Johnston, 241 N.C. 201, 85 S.E.2d 114. Also see, to the same effect, Bramlett v. Young, 229 S.C. 519, 93 S.E.2d 873.
This is an abounding array of authorities but they all treat some phase of litigation growing out of church schisms in which both factions lay claim to the church property. When the church is representative, republican or episcopal in government, the authorities uniformly hold that the church property whether held by an express or an implied trust cannot be diverted from the parent church by those who withdraw from it and form a separate denomination. It matters not whether those who withdraw from the mother church constitute a majority or a minority faction, the church property remains with the mother church. There are exceptions to this rule when the schism occurs in a church whose government is congregational in form like the Baptist or Congregational denominations but in churches bound together by associated ecclesiastical government when the local church is obedient to a larger or more important religious organization and is governed by it, such as the Presbyterian, Catholic, Episcopal, Methodist and Lutheran, I have found no exception to this rule. They could not function under any other rule.
Now let us examine Reid v. Barry, 93 Fla. 849, 112 So. 846, 850, on which the chancellor hung his decree. Read in sum, we think this case supports the conclusion *719 we reach in the case at bar. In that case the grantees' successor attempted to quiet title against the liens of the grantor while in the case at bar we seek to determine the rightful representatives of the original grantees under conditions establishing an implied trust. In Reid v. Barry possession and use were proffered to defeat the claim of the grantors' heirs while in this case possession and use reveal beneficial ownership and those entitled to use and enjoyment for the purposes originally intended. In Reid v. Barry the deed ran to "Right Reverend John Moore, Bishop of St. Augustine, Florida, and his successors in office and assigns forever," while in this case the deed ran to "Trustees of West Central Presbyterian Church and their successors in office." In Reid v. Barry the complaint nowhere alleges "that the deed was a trust deed, or that it was made to the bishop for the benefit of the Roman Catholic Church." It is silent as to the purpose for which it was made and the Roman Catholic Church is nowhere named therein, while here it is alleged and admitted that the property was acquired by the First Presbyterian Church of St. Petersburg and was given and conveyed to "Trustees of West Central Presbyterian Church of St. Petersburg and their successors without cost for the purpose of establishing a Presbyterian Church consisting of a number of professing Christians, with their offspring voluntarily associated together, for divine worship and Godly living, agreeable to the Holy Scriptures, and submitting to the government and discipline of the Presbyterian Church in the United States as contained in the Book of Church Order." These and other provisions of the Book of Church Order would certainly make it part of the contract. Overlooking this, the chancellor fell into error.
Other provisions of the deeds in the two cases are equally as pertinent and convincing but we do not consider it necessary to repeat them. We think they show without question an implied trust in the property in favor of the loyal members of the Presbyterian Church in the United States for the purposes stated. If it could be held that no implied trust existed in favor of the Presbyterian Church in the United States the ecclesiastical question would then arise as to which faction engaged in the schism was the rightful representative or successor to the Central Church in its attempt to withdraw from affiliation with St. John's Presbytery and the Presbyterian Church but that question is not in the picture.
If the question were here, its solution would involve the doctrine, discipline, ecclesiastical law, rule and custom of the Presbyterian Church. Such questions the courts will not attempt to resolve, even though property rights are involved, but will rely on the decision of them by the highest ecclesiastical court of the church. It appears from the record that the attempted withdrawal was appealed to St. John's Presbytery and was adjudged to be out of order. No appeal was taken from the order of the Presbytery so under Section 284, Book of Church Order, that action became final, no appeal having been taken to the Synod of Florida, The Church Court of final jurisdiction in the state. So it appears that Central Church has never effectively withdrawn from Florida Presbytery. All of which leads one to the ineluctable conclusion that these dissident lambs at one time happy and contented in the Central Church voluntarily bounded the theological fold in search of what they thought were greener ecclesiastical pastures but missed the boat and are now like the children of Israel grazing in the wilderness of dispair absent a church home which no human agency except perhaps intercession can restore.
It follows that the final decree of the chancellor must be, and is, hereby reversed with directions to enter a decree holding that, on account of the circumstances shown an implied trust existed in the property in question in favor of the Central Presbyterian *720 Church of St. Petersburg for the use of the Presbyterian Church in the United States and awarding the use of said property to appellants as the rightful representatives of the original church as it existed before the schism.
Reversed with directions.
HOBSON, ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.