125 So.2d 762 (1961)
PRESBYTERY OF THE EVERGLADES, a corporation, and Clara Krome Wilson, for and on behalf of herself, and for and on behalf of all other persons similarly situated, Appellants,
v.
Charles O. MORGAN, individually, and as the representative of all other persons of a class similarly situated, Willis E. Garrett, and the Miami Beach Independent Presbyterian Church, also known as The Miami Beach First Presbyterian Church, a corporation, Appellees.
No. 59-654.
District Court of Appeal of Florida. Third District.
January 5, 1961.
Rehearing Denied January 25, 1961.
*763 Sibley, Grusmark, Barkdull & King, Miami Beach, for appellants.
Copeland, Therrel, Baisden & Peterson, Miami Beach, for appellees.
HORTON, Chief Judge.
This appeal is from a decree adverse to the appellants. In substance, the decree adjudicated that equitable title to the real property upon which was located a church was in the appellee Miami Beach Independent Presbyterian Church, a non-profit corporation. The individual appellees are members of and representative of a group of persons formerly members of the Miami Beach First Presbyterian Church, who had withdrawn and severed their connections with the Presbyterian Church in the United States. At the time of the withdrawal, the Miami Beach First Presbyterian Church was an organized member of the Presbyterian Church in the United States and the appellee Garrett was its duly ordained minister.
A chronological history of the facts which gave rise to this litigation is: In November, 1935, the appellant Presbytery approved an application from some 35 persons for the establishment of a Presbyterian church in Miami Beach to be known as the Miami Beach First Presbyterian Church. The application was accepted and approved in accordance with the provisions of the Book of Church Order, the governing rules of the Presbyterian Church in the United States, which in part provided that a church may be organized by the authority of the Presbytery and dissolved by it. Predicated upon certain required pledges and covenants, the Presbytery declared the persons applying to be members of the Presbyterian church and that they constituted a church according to the Westminster Confession of Faith and the rules of government and discipline as provided in the Book of Church Order. After the establishment of the Miami Beach First Presbyterian Church, a corporate non-profit charter under that name was obtained in 1940. The charter provided that all members of the church at the time of the organization, and all other persons who became members thereafter, would be members of the corporation, provided that whenever any member should cease to be a communicant member in good standing, such person would cease to be a member of the corporation. Article II of the charter further provided that the corporate objects and general purpose were to establish a church organization or society to be Presbyterian in its doctrines, *764 tenets and form of government, as such doctrines, tenets and government are prescribed by the Westminster Confession of Faith, Catechisms and form of government in use by the various Presbyterian denominations and to be connected with and subject to the jurisdiction of the Presbyterian Church in the United States. In the same article was the following provision: "* * provided, however, that by vote of threefourths (3/4) of the members of this corporation, who are present at a regularly called meeting, its connection with and jurisdiction of the said Presbyterian Church in the United States may be severed, and when or if such relations are severed it may connect itself with any other body or denomination of Christians if it so desires." Another provision of the charter, brought into perspective by the decree appealed, is the following: "* * * it being understood that the title to such property shall vest in the corporation and not in the denomination with which it is connected."
On or about March 6, 1941, certain real property was purchased, the title to which was taken in the name of the non-profit corporation, and thereafter a church was erected thereon. The funds for the erection of this church were furnished by the membership and by visitors of like and other denominations in attendance. In April, 1954, the appellant Presbytery directed a letter to the appellee Garrett in which he was advised that Article II of appellee's corporate charter be amended or replaced to bring it in accord with the Book of Church Order. In July, 1954, a notice of a meeting to be called for August 2, 1954, for the purpose of withdrawing the church from its membership in the Presbyterian Church in the United States was published. Upon learning of this proposed action, the appellant Presbytery issued an injunctive order prohibiting appellee Garrett and the members of the session of said church, as well as each and every member thereof, from attending such meeting and taking any action on the proposed withdrawal from the church. However, contrary to the injunctive order, the appellee Garrett, members of the session and members of the church met and, by an overwhelming majority, voted to secede from the Presbyterian Church in the United States. Thereafter, the seceding members of the local church continued to use the property as a house of worship for an independent church, and changed the name to the present corporate appellee by an amendment to the corporate charter. Following the development of this schism, the appellant Presbytery, after due notice to the parties concerned, rendered a judgment and decree against the appellee Garrett, the former session members of the Miami Beach First Presbyterian Church and all other persons who had seceded, adjudicating that they were no longer members of the Miami Beach First Presbyterian Church and directing that the church property be turned over to the appellant Presbytery or its representative. This directive was ignored and the litigation now before us was instituted.
The appellants contend that the Presbyterian church has a representative form of church government and as such, its members are bound by the law of the church contained in the Book of Church Order; that under this form of government, a withdrawal of a majority of the members of a local church from the Presbytery did not carry with it the use of or right to the church property. On the contrary, the church property belonged exclusively to the loyal members of the church, subject to administration by the Presbytery. This contention, the appellants point out, is supported by the principles enunciated in St. John's Presbytery v. Central Presbyterian Church of St. Petersburg, Fla. 1958, 102 So.2d 714, 718, a case in which the St. John's Presbytery represented the same authority as the appellant Presbytery does in the case at bar. The members of the St. Petersburg church voted to sever their connections with the denomination. The trial court held that the property of the local church belonged to the majority who had *765 voted to withdraw from the denomination. Upon appeal, the Supreme Court of Florida reversed the cause and pointed specifically to the fact of management of the affairs of the church or corporation according to the Book of Church Order which could not be rescinded or modified except by the Presbytery of the Presbyterian Church in the United States. The court said:
"When the church is representative, republican or episcopal in government, the authorities uniformly hold that the church property whether held by an express or an implied trust cannot be diverted from the parent church by those who withdraw from it and form a separate denomination. It matters not whether those who withdraw from the mother church constitute a majority or minority faction, the church property remains with the mother church. There are exceptions to this rule when the schism occurs in a church whose government is congregational in form like the Baptist or Congregational denominations but in churches bound together by associated eccliastical government when the local church is obedient to a larger or more important religious organization and is governed by it, such as the Presbyterian, Catholic, Episcopal, Methodist and Lutheran, I have found no exception to this rule. They could not function under any other rule."
The appellees, on the other hand, contend that the provisions of their corporate non-profit charter, which permitted a severance of the appellee church from the Presbytery, did not thereby forfeit the church property to the Presbytery so long as the church continued to adhere to the principles of the Protestant Christian faith and the Presbyterian form of church government. This contention is allegedly supported by the doctrine announced in Partin v. Tucker, 126 Fla. 817, 172 So. 89.
We are persuaded to the view that the appellants' position as supported by the case of St. John's Presbytery v. Central Presbyterian Church of St. Petersburg, supra, is sound. The Partin case involved litigation arising as the result of dissention between members of the Pinegrove Baptist Church which was an uncharted religious assembly organized under the congregational plan of government. This plan is distinguished from the representative form of ecclesiastical government applicable to the appellant church. See Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666; Presbytery of Bismarck v. Allen, 74 N.D. 400, 22 N.W.2d 625. Admittedly the two types of church origanization require the application of different rules and in this instance, we feel that the facts of the present case fall squarely within the rule announced in the St. John's Presbytery case. The fact that legal title to the property was vested in a non-profit corporation, with a proviso that the members of the corporation could sever themselves from the mother church, could not affect the application of the rule that their organization, tenets of faith and practices were admittedly governed by the Book of Church Order and the ecclesiastical government recognized thereby. The members who first organized the appellee church, as well as those who afterwards obtained membership, took an oath of allegiance to the tenets of faith and subjected themselves to the discipline and government of the mother church. The property was impressed with a trust for the uses and purposes of those belonging to and professing to be members of the Presbyterian Church in the United States. The majority who withdrew were no longer members of the mother church and, therefore, had no right, after withdrawal, to the use of the church property. The amendment to the charter, changing the corporate name of the majority who had seceded, may be valid and satisfactory to the seceders, but it could have no effect upon the property and the rights of those who remained faithful to the mother church. Cf. Rekas et al. v. Polish National Catholic Church, Western Diocese et al., Fla. 1958, 102 So.2d 705.
*766 In a representative form of church government, individual members of a particular church or congregation are free to withdraw their membership at any time from such church or congregation, but they are not permitted to take the church property with them. St. John's Presbytery v. Central Presbyterian Church of St. Petersburg, supra; Presbytery of Bismarck v. Allen, supra. In this instance, their actions in attempting to appropriate the church property for uses inconsistent with and in violation of higher church authority were void.
Accordingly, the decree appealed is reversed and the cause is remanded for the entry of a decree not inconsistent with the views expressed herein.
Reversed and remanded.
PEARSON and CARROLL, CHAS., JJ., concur