## BUKSCH and SAMA v BROHAMER, etc., et al.
### Case No. 88-53000 CA 02
Eleventh Judicial Circuit, Dade County

February 5, 1990

## OPINION OF THE COURT

RONALD M. FRIEDMAN, Circuit Judge.

### FINAL JUDGMENT

THIS MATTER having come before the Court on hearings and the Court having heard argument of counsel, reviewing the file, and being otherwise fully advised in the premises, the Court hereby finds as follows:

The Plaintiff initiated these proceedings seeking injunctive relief from interference by civil authorities in a factional dispute between the Plaintiff and the Archdiocese of Miami (and individual representatives and churches therein, hereafter, the Archdiocese). The Archdiocese had, on several occasions, requested the removal of the Plaintiffs from several churches because of alleged disruptions of services by the Plaintiffs. (Hereafter, reference to Cchurch shall mean the entire Catholic Church system. References to cchurches shall be to individual churches within the Church system). The Plaintiffs are individuals who

are devoutly religious and who have unquestionably brought this action in good faith. The disruptions of church services by the Plaintiffs are because of acknowledged omissions from the church service of the "Lamb of God" invocation of the Catholic Mass.

The Plaintiffs assert their absolute right to attend services of their choice; the absolute requirement under Church law that the "Lamb of God" portion be included in the services; and their absolute right and obligation under Church law to protest any deviation in Church liturgy and to enunciate at the appropriate juncture the "Lamb of God" portion, even if the correction disrupts the liturgy. Plaintiffs also claim that because the Archbishop holds title for the benefit of all Catholics that he does not have the legal authority under Florida law to forbid Plaintiffs access to the church property whether to preserve good order in the celebration of the liturgies or otherwise. Plaintiffs claim that this Court must defer its decision to the highest authority of the Catholic Church.

The Archdiocese counterclaimed, seeking injunctive relief from disruptions by Plaintiffs as well as a restraining order prohibiting Plaintiffs from "trespassing" on church property of the Archdiocese.

Although the Metro Dade Police Department and the State Attorney were originally named defendants, this Court previously dismissed them from the case.

The Plaintiffs have provided convincing evidence that the churches they have attended have in fact, if not in spirit, strayed from the required liturgy of the church, and therefore there may be merit to the Plaintiffs protests. However, it is beyond the jurisdiction of the Court to determine, or even consider, church law or dogma, and any protests of the Plaintiffs must be through the hierarchy of the Church. Therefore, the only two issues before this Court which it can consider are:

1. Does the titleholder to the church property have the legal right to determine who may set foot upon such property?

2. If the Plaintiffs are lawfully on church property, are they entitled to vocalize their beliefs and prayers or are such actions subject to restraint because it is disruptive and violative of the rights of others present?

As will be shown below, the Court answers issue number one (1) in the affirmative. Since the Archdiocese's counterclaim seeks to exclude the Plaintiffs from church property the Court's acknowledgment of the Archdiocese's right to exclude the Plaintiffs makes moot the necessity to determine whether or not the actions of the Plaintiffs are so

116

disruptive as to restrain them. Suffice it to say, however, members of the church are subject to restrains of law and their behavior may be subject to restraint if it is determined to be an intolerable violation of the right of others engaged in worship. The Courts have long recognized an individual's right to worship free of disruption and disturbance. To that end Courts have granted injunctions to prevent disruption of religious activity. See *Action v Gannon*, 450 F.2d 1227 (8th Cir. 1971); *Corp. of Pres. of Church of Jesus Christ v Wallace*, 590 P.2d 343 (Utah 1979); *Gregory v Chicago*, 394 U.S. 111 (1969).

Plaintiffs acknowledge that legal title is in the name of the Archbishop but argue that the Archbishop holds title for the church and the church holds title for all Catholic people. (Actual title reads: "The Most Reverend A. McCarthy, as Archbishop of the Archdiocese of Miami, his Successors in Office, a Corporation Sole.") Citing Canon 1214 of the Catholic Code of Canon Law "The term church signifies a sacred building for divine worship for which faithful have a right of access for divine worship especially its public exercise." The logical argument thus raised by Plaintiffs is that the legal title is custodial only and held for the benefit of Plaintiffs and all faithful Catholics, and therefore the Plaintiffs cannot be enjoined by this Court from access to the church - that any limitations would have to be by the Church hierarchy.

Plaintiffs ask "Since it is a personal (civil) right of the Plaintiffs that having chosen to follow the teaching of the Catholic Church they are entitled to worship as the church teaches, it is not a deprivation of that right if certain individuals, conspiring with the pastor, are permitted to introduce aberrant ritual elements?"

The Plaintiffs then partially answer their own question by citing *Watson v Jones*, 80 U.S. 679, 20 L.Ed. 666 for the premise that - *"no one* has the right to worship as they see fit."

This Court concurs with *Watson* and the premise stated, but its applicability leads to a conclusion different than that of Plaintiffs.

It is inappropriate, and our Constitution will not condone this Court or any other Court determining the right way to pray or the proper liturgy to follow, or whether or not there is a proper liturgy that should or must be followed by a particular religious denomination. Such determinations are solely within the machination of the Church, and its hierarchy - or - solely within the individual's choosing to worship as he or she sees fit, but only within the confines of the law.

This country was established and founded in great part upon freedom of religion. That freedom is an absolute one of *mind* and

**117**

*belief,* but not an absolute one of *action.* Religious action may not interfere with the rights of others and no one has the right to impose their religious beliefs upon another. In the instant case this means that the Church cannot legally impose its liturgy (in whatever form - whether "complete" or "incomplete") upon the Plaintiffs should they choose not to accept it, and the Plaintiffs cannot impose their beliefs upon the church or its parishioners. If the Plaintiffs are not satisfied with the liturgy of a particular church, they may seek to change it through various lawful means which would include, among others:

1. Appeals through the Church hierarchy

2. The art of persuasion - by talking to other parishioners and/or clergy or publishing their opinions in a manner which does not interfere with others' rights.

However, the Courts cannot be used to change liturgy which does not infringe on human rights, and the Plaintiffs cannot seek to espouse their views by disrupting the prayer of others.

The Plaintiffs acknowledge that there are some churches which literally follow the liturgy as they believe it must be followed - but the churches are not necessarily convenient in time or place for the Plaintiffs. *Convenience* of religion is neither a God given right nor a Constitutional right. However, even if there were *no* other churches which followed the full liturgy, Plaintiffs may be left to a recourse of following such liturgy *silently* in church or as they choose in the sanctity and privacy of their own home.

To some who may read this opinion it may seem that the omission of one brief prayer would be deminimus and that the Plaintiffs should simply go along with the minor "deviation". This Court neither suggests that nor encourages that. The Plaintiffs are, to their credit, devoutly religious and believe that there can be no deviation from the word of Rome and above.

However, any deviations, if they are in fact deviations, must be handled internally within the structure of the Church system - not within the Court system. The Plaintiffs' protest rights must be by way of the Church appellate procedures without infringement upon others who may accept the practices within an individual church.

This Court agrees with Plaintiff that it must defer to the highest authority of the Church concerning Church issues. Noting the decision of *St. John's Presbytery v Central Presbyterian Church of St. Petersburg,* 102 So.2d 714 (Fla. 1958) this Court will not attempt to resolve questions of ". . . doctrine, discipline, ecclesiastical law, rule, and custom of the . . . church . . . even though property rights are

118

involved, but will rely on the decision of them by the highest ecclesiastical court of the church" (719). However, for order in our society, the legal Courts of our country have the jurisdiction and authority to determine title to property and the rights which accompany it. In the instant case, legal title to the defendant churches' property is in the name of the Archbishop, admittedly for the use and benefit of the Roman Catholic Church and its members. Therefore, at issue is whether Archbishop McCarthy's ownership is actual, or custodial, and if custodial then where does the legal authority reside?

It is well settled in Florida law that a bishop's title to property in his capacity as bishop does not create a legal trust, even though it is held for the benefit of good Catholics. Title is in fee simple with full power as any other legal title holder to real property. The bishop has the same right of peaceable possession to prevent unwanted and unlawful intrusion or trespasses as would any other property owner. *Reid v Barry,* 112 So. 846 (Fla. 1927); *Corp. of Pres. of Church of Jesus Christ v Wallace,* 590 P.2d 343.

The Court notes that the Roman Catholic Church is organized in a hierarchy of ruling leaders as opposed to a congregational format. The Roman Catholic Church provides for all authority to be vested in the Pope, who then delegates authority through various levels of clergy down to the parish priest. Thus the archbishop is the authority at the Archdiocese level and has the legal ability to exercise all proprietary rights that any legal owner could exercise. See *Reid v Barry,* supra. In applying normal property law of the State of Florida this translates in the instant case into the authority to exclude individuals from the property of the churches of the Archdiocese of Miami.

While there is no question that the Plaintiffs are faithful members of the Roman Catholic Church, they must look to the Church and its legal hierarchy to alter the authority of the Archbishop of Miami and for any relief from the exercise of the Archbishop's right to exclude them from church premises.

This Court initially entered a Temporary Restraining Order against the Plaintiffs enjoining them from interrupting or disrupting any assembly of people meeting for the worship of God at Our Lady of the Holy Rosary Church and St. Richard's Catholic Church. Chapter 871.01 of the Florida Statutes prohibits the interruption or disruption of any assembly of people meeting for the worship of God. Although the Court has not reached a final finding as to whether or not the Plaintiffs did actually interrupt or disrupt a religious assembly, THIS COURT FINDS, ORDERS AND ADJUDGES:

1) Archbishop Edward A. McCarthy is the titleholder of the properties of the Holy Rosary and St. Richard's Churches, and as such, has the authority to exclude the Plaintiffs from the Defendants' properties.

2) That the Defendants have no remedy at law to protect their property rights and the rights of the parishioners at Holy Rosary and St. Richard's to worship in peace. The defendants will be irreparably harmed if the Plaintiffs are permitted to enter the property to engage in disruptive behavior. (Neither an action for trespass nor money damages would serve the purpose of assuring the peaceful conduct of religious services).

3) The potential injury to the Defendants outweighs any possible harm to the Plaintiffs since even the Plaintiffs acknowledge that other Catholic churches are available to them within the Miami Archdiocese, (although not as convenient as the Defendant churches) which other churches follow the liturgy demanded by the Plaintiffs.

4) The prior Temporary Injunction is made Permanent as being in the best interest of the public.

This Court retains jurisdiction to enforce and carry out the intent of this judgment.

**DONE AND ORDERED** in Chambers at Miami, Dade County, Florida, this 5th day of February, 1990.