344 So.2d 259 (1977)
John P. BALDWIN, Individually and Claiming to Be Moderator of the Session of the Madison Presbyterian Church in Madison, Florida, et al., Appellants,
v.
Craig MILLS et al., Appellees.
No. Z-13.
District Court of Appeal of Florida, First District.
March 25, 1977.
Rehearing Denied April 26, 1977.
*260 F.E. Steinmeyer, III, of Folsom & Steinmeyer, Tallahassee, for appellants.
C. Graham Carothers, Tallahassee, Edwin B. Browning, Madison, for appellees.
BOYER, Chief Judge.
This appeal emanates from an intrachurch dispute between two factions vying for control of church property. Involved are spiritual, emotional, legal and constitutional issues. In recognition of the wall of separation erected by Thomas Jefferson between church and state as part of the First Amendment to the Constitution of the United States[1] we must, in response to the constitutional mandate, meticulously tread around the emotional and religious issues and base our conclusions on sterile legal doctrines.[2]
Plaintiffs in the trial court, appellees here, were Craig Mills and H. Savely McQuagge, Trustees of the Presbytery of Florida of the Presbyterian Church in the United States; Frank L. Elvery, Richard L. Scoggins, C. Franklin Beall, Louise Eyster, Reeves Bowen and Fred McGehee as and constituting the Administrative Commission of the Presbytery of Florida of the Presbyterian Church in the United States; Henry Ragans and Oscar Beck, Jr. as members of and recognized by the Presbytery of Florida of the Presbyterian Church in the United States as constituting the Church Session of the Madison Presbyterian Church in Madison, Florida. The defendants, appellants here, were (as named and designated by the plaintiffs) John P. Baldwin, individually, and claiming to be Moderator of the Session of the Madison Presbyterian Church in Madison, Florida; Bruce M. Bryan, Julian DuRant, Julian Gibson, Theodore Gibson, A.L. Hughes and Kirby Reichmann, individually and claiming to be members of the *261 Church Session of the Madison Presbyterian Church in Madison, Florida, and Florida First National Bank at Madison, a bank holding funds on deposit in the name of the church. The attorneys for the respective parties entered into a lengthy stipulation which was filed in evidence before the trial judge agreeing upon numerous facts many of which, although not relevant to the application of sterile legal doctrines, are necessary in order to understand the factual basis of the controversy.
A Church Session is the governing body of a local church. A Presbytery is composed of several churches in a geographical area; a Synod is generally composed of all Presbyteries within a state or other designated geographical area and the General Assembly is the highest governing body in the hierarchical spiritual structure of the Presbyterian Church.
The first Presbyterian Church was established in America on the Virginia coast in 1607. Originally there was one main body of Presbyterianism which was known as the Presbyterian Church in the United States of America. (PCUSA) The Madison Presbyterian Church located at Madison, Florida was founded in 1840.[3] It was originally a part of the Presbytery of Georgia but later became a congregation of the Presbytery of Florida. It is, and at all times has been, an unincorporated entity. Since its formation in 1840 all of the church property has been held by trustees elected by a majority of the congregation of the church. The primary church property was acquired by deed executed in March of 1851 to the "Trustees of the Presbyterian Church at Madison aforesaid and their successors in office * * * To Have and To Hold the said lots of land to and for the use of the Presbyterian Church at Madision". In 1861 the Presbytery of Florida met at the Madison Presbyterian Church in Madison and unanimously adopted a resolution severing its affiliation with the Presbyterian Church in the United States of America (PCUSA) and concurred in a call for Commissioners for the organization of a General Assembly with power to organize a new church. The Madison Church sent a delegate to the meeting of the General Assembly held in 1861 (held incidentally at the Madison Church) at which time a resolution was unanimously adopted by which a denomination was formed bearing the name Presbyterian Church in the Confederate States of America. Thereafter, the name of that denomination was changed to the Presbyterian Church of the United States (PCUS). The parties have stipulated that neither the General Assembly of the Presbyterian Church in the United States nor the Synod of Florida nor the Presbytery of Florida has ever contributed any property to the Madison Presbyterian Church, nor has it provided any funds with which the property of said church was acquired.[4]
On March 11, 1973, John P. Baldwin, then the regular ordained and installed Pastor of the Madison Presbyterian Church, presided over a meeting of the congregation. Upon a vote taken at such meeting, a petition was adopted requesting the Presbytery of Florida to dismiss the Madison church and its property from the Presbytery and to dismiss and dissolve the relationship between Rev. Baldwin and the Presbytery of Florida and the PCUS. Following various intrachurch maneuvers a resolution was adopted by the congregation of the Madison Presbyterian Church on May 20, 1973[5] withdrawing from and severing all relationship with the Presbytery of Florida and the PCUS. On June 5, 1973 the Presbytery of Florida removed the name of John Baldwin from the roll of the Presbytery and declared the pulpit of the Madison Presbyterian Church to be vacant. The Presbytery declared and *262 recognized Messrs. Beck and Ragans, among others, as constituting the Church Session of the Madison Presbyterian Church with full authority to assume control of the congregation and all land, buildings, personal property and monies of the local church.[6]
On August 7, 1973 plaintiffs (appellees here) filed an action in Circuit Court asking that the individual defendants and all others associated with them be restrained from interfering with the plaintiffs and other "loyal" members of the PCUS in the use of the property of the Madison Presbyterian Church; from using or attempting to use the property of the Madison Presbyterian Church for any purpose except in conformity with and subject to the government and discipline of the PCUS; from selling, disposing of or encumbering the property of the Madison Presbyterian Church; from paying or delivering to any person or corporation any money, funds, bonds, securities, or other property in their possession or under their control constituting the property of the Madison Presbyterian Church and from occupying the Manse of the Madison Presbyterian Church. The foundation of the plaintiffs' cause of action as alleged in their complaint was a "trust originally imposed upon said property [of the Madison Presbyterian Church] for the promulgation of the trusts and doctrines of the Presbyterian Church in the United States * *". At the conclusion of a lengthy trial, final judgment was entered for the plaintiffs. This appeal followed.
Appellants first argue that appellees did not have standing in the trial court to maintain the action and that the proper representative of the PCUS is the General Assembly. According to appellants, the trial court erred in concluding that the Presbytery of Florida did have standing and further erred in citing as authority for his conclusions certain provisions of the PCUS constitution as found in the Book of Church Order.
In determining whether a party adequately represents a class, the test is whether the interests of the persons who are not parties to the suit can be better protected if they act for themselves.[7] In each case where the alleged representatives of a class are challenged, the question is whether the purported representatives "are sufficient under the circumstances of the case to truly represent the class as to whom the suit is directed."[8] Applying those principles, we find that appellees were and are proper parties to sue on behalf of the proposed class. The individual plaintiffs comprised three separate groups: The Trustees of the Presbytery of Florida, the Administrative Commission of the Presbytery of Florida of the PCUS, and those members of the Madison church remaining "loyal" to the PCUS and purporting to constitute the Session of the Madison church. We find nothing in the record to refute the trial court's finding that those groups truly and fairly represent the national organization. It is no argument to claim that another group could serve as the representative of the class. While the General Assembly of the PCUS may represent the national organization in most matters, there has been no showing that the General Assembly is to be the exclusive representative of the PCUS in class actions nor that the appellees would not adequately represent the PCUS in the present class action. In the absence of either showing, we will refrain from disturbing the trial court's conclusions as to the issue of standing.
*263 The more fundamental issue is whether the trial court erred in imposing an implied trust in favor of the PCUS upon the property of the Madison church.[9] That question raises the spectre of the First Amendment of the Constitution of the United States. The "Implied Trust Doctrine" as applied in church disputes has its origin in a vintage U.S. Supreme Court case, Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871).[10] To summarize the holding of that case as it may be relevant to the case sub judice, a local church belonging to a general church organization which is hierarchical in nature may not withdraw from the general church organization and still retain local church property or the use of it: Withdrawal from the national organization causes the local church property to devolve to the national organization by virtue of the Implied Trust Doctrine. Although the Watson case was decided according to federal common-law principles, and was rendered before Erie R. Co. v. Tompkins,[11] and before the requirements of the First Amendment were held applicable to the states through the Fourteenth Amendment, the underlying philosophy of the decision was constitutional in nature and was recognized as such in Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra.
The latter case, appellants urge, sounded the death knell to the Implied Trust Doctrine. A closer reading of the case leads to a contrary conclusion. In the Mary Elizabeth Blue Hull case, the court considered a similar factual situation involving the same denomination as the case sub judice and specifically invalidated an aspect of Georgia law which submitted the case to the jury on the theory that a trust would be implied on local church property for the benefit of the general church on the condition that the general church adhere to its tenets of faith and practice existing at the time of affiliation by the local church. In other words, the question for the jury was whether the actions of the general church amounted to a fundamental or substantial abandonment of the original tenets and doctrines of the general church. The United States Supreme Court found that such a question was constitutionally impermissible because the so-called "departure-from-doctrine" element of the Georgia implied trust theory required, "* * * the civil court to determine matters at the very core of a religion  the interpretation of particular church doctrines and the importance of those doctrines to the religion."[12] The court noted that civil courts should not resolve controversies over religious doctrine and practice, but recognized that there were neutral principles of law which could be applied without "establishing" churches.[13] Thus, the Court invalidated the "departure-from-doctrine" element of Georgia's implied trust theory;[14] but not the entire implied trust theory itself.[15]
*264 The teachings of Mary Elizabeth Blue Hull are that the state has a legitimate interest in resolving property disputes and that a civil court is a proper forum for such resolution notwithstanding that the dispute involves a church. We are also admonished that civil courts have no role in determining ecclesiastical questions: However, not every civil court decision as to property claimed by a religious organization jeopardizes neutral principles of law, developed for use in all property disputes, which can be constitutionally applied in church property disputes.
It necessarily follows therefore that application of neutral principles of law requires judicial interpretation of instruments granting property to religious organizations to be conducted under the same principles as those applied to instruments granting property to any individual or organization. Application of neutral principles of law will not prevent the creation of an express or implied trust in favor of a religious organization where the conveying instrument contains the appropriate language or where the religious organization has supplied congregational property or the funds for its acquisition.
Applying the foregoing teachings to the unique facts of the case sub judice we are unable to agree with the conclusion of the learned trial judge that "record title to the property in dispute is held by the Trustees of Madison Church of Madison, Florida for those persons recognized as members of that particular church by the respective courts of the Presbyterian Church U.S. subject to an implied trust in said property for the uses and purposes of those belonging to and professing to be members of the Presbyterian Church U.S." The documents of title, which are the primary source of information in all property disputes, reveal that title to the church property is vested in the Trustees of the Presbyterian Church at Madison or the Trustees of the Madison Presbyterian Church of Madison. The one deed which gives any indication of intended use prescribes that the property is "for the use of the Presbyterian Church at Madison". The root deed predates the existence of the PCUS. In the absence, then, of some subsequent document or understanding between the Madison church, which predated the PCUS, and the latter organization it is apparent that no trust could have come into being. The evidence reveals no such subsequent understanding nor basis for a trust of any kind, implied or express.
No express trust can be said to have arisen under neutral principles of law because, as already noted, none of the conveying instruments contain any reference whatsoever to the Presbytery of Florida nor to the PCUS, and the evidence reveals no subsequent document nor understanding of that effect.
If an implied trust is to be imposed under neutral principles of law it must be either a "constructive trust" or a "resulting trust". A constructive trust arises to avoid unjust enrichment as a result of fraud, duress or mistake; as where, for instance, a party not named in the conveying instrument has provided all or part of the funds by which the property was acquired. By stipulation of the parties neither the Presbytery of Florida nor the PCUS provided any funds with which any of the property of the Madison church was acquired. A resulting trust arises to accomplish the presumed intent of the parties, as where the parties intend that the holder of the title is to hold in behalf of the other. The plaintiffs produced no evidence at trial that any of the properties conveyed to the Madison church were intended to be conveyed for the benefit of any entity other than the congregation of the Madison Presbyterian *265 Church. In that regard it is desirable to again repeat that the property of the Madison church which is of principal value and importance was conveyed to the Madison church several years before the PCUS even came into existence. Indeed, if it might be said that an implied trust exists at all it would be in favor of the Presbyterian Church in the United States of America (PCUSA), the "parent" organization which yet exists and with which the Madison church was affiliated prior to withdrawal in 1861.[16] It is difficult to understand how the Madison church might be held to have successfully withdrawn itself and its property from the PCUSA in 1861 but be unable in 1973 to withdraw itself and its property from the PCUS which could not be the "mother" church since it came into existence after the Madison church was already 21 years of age. It is axiomatic that a mother must be older than her child.
Prior to Presbyterian Church of the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra, and its progeny, Presbyterian Church in United States v. Eastern Heights Presbyterian Church, supra, it might have been argued that Watson v. Jones had created a third category of implied trusts, in addition to the traditional resulting trusts and constructive trusts. However, a careful reading of Watson v. Jones reflects that it was not necessary under the facts there recited to create a third category, as the facts of that case fit the traditional application of implied trust. If indeed Watson v. Jones may be said to have created a third category of implied trust, it is clear in the light of Mary Elizabeth Blue Hull that it has lost some of its vitality since Erie R. Co. v. Tompkins and that now neutral principles of trust law applicable to all such controversies in the particular jurisdiction will be applied in church property disputes. Lest it be urged that St. Johns Presbytery v. Central Presbyterian Church,[17] recognized a third category of implied trusts in Florida we refer back to that opinion and find that there is nothing there to so indicate. The facts in St. Johns Presbytery fit traditional trust principles. Indeed, a careful reading of that opinion reveals that the author, in distinguishing Reid v. Barry,[18] struggled mightily to demonstrate that there was no intention of engrafting any new doctrine onto the traditional principles of trusts in Florida. It necessarily therefore follows, applying neutral principles of trust law, that in order to impress an implied trust the facts must establish either a constructive trust or a resulting trust. The facts sub judice support neither. Appellees do not even contend that there exists an express trust. It follows then that there is no trust at all.
The stipulation of the parties recites that "since the formation of the Madison Presbyterian Church in 1840 all of the property of the said church has been held by trustees elected by a majority of the congregation of the Church", that "defendants Bruce M. Bryan, Julian DuRant, Julian Gibson, Theodore Gibson, A.L. Hughes and Kirby Reichmann constituted a majority of the Session of the Madison Presbyterian Church, eleted by a majority of the congregation of said church, at the time of the actions complained of by the plaintiffs in this cause" and that "defendants, Bruce M. Bryan, Julian DuRant, Julian Gibson, A.L. Hughes and Kirby Reichmann, constituted a majority of the Trustees of the Madison Presbyterian Church, elected by a majority of the congregation of said church, at the time of the actions complained of by the plaintiffs in this cause." (Emphasis added) Therefore, application of neutral principles of law leads to the inescapable conclusion that the ownership and control of the local church *266 property resides in Trustees of the Madison Presbyterian Church elected by a majority of the congregation.
In so holding we collide with neither Watson v. Jones, supra, St. Johns Presbytery v. Central Presbyterian Church, supra, nor any of the other numerous cases relied upon by appellees. Application of the principles announced in those cases must necessarily be restricted to factually similar situations, none of which exist in the case sub judice.
In Watson v. Jones, the author of the opinion carefully recited that the subject church was originally organized "under the authority and as part of" the national organization and that the church property was purchased after its organization and therefore after it became a part of the national church. The trustees of the church[19] were thereafter incorporated. None of those characteristics are applicable to the Madison church. However, the most important distinguishing feature between Watson v. Jones and the case sub judice is the admission, as recited in the former opinion: "Though neither the deed nor charter said this in terms, it was admitted that both contemplated the connection of the local church with the general Presbyterian one, and subjected both property and trustees alike to the operation of its fundamental laws."[20]
St. Johns Presbytery v. Central Presbyterian Church, supra, is likewise distinguishable. There the affected church (Central Presbyterian Church of St. Petersburg) had been organized and established by the First Presbyterian Church of St. Petersburg from whence it received financial assistance and from whence it received a gift of the disputed property, the conveyance being to "Trustees of West Central Presbyterian Church of St. Petersburg and their successors without cost for the purpose of establishing a Presbyterian Church consisting of a number of professing Christians, with their off-spring voluntarily associated together, for divine worship and Godly living, agreeable to the Holy Scriptures, and submitting to the government and discipline of the Presbyterian Church in the United States as contained in the Book of Church Order." The church was thereafter incorporated as "Central Presbyterian Church of St. Petersburg", the charter of which the writer of the opinion recited "provides that membership therein shall be governed by the Book of Church Order of the Presbyterian Church. The Book of Church Order further provides for management of the affairs of the church or the corporation which could be rescinded or modified only by the Presbytery of the Presbyterian Church in the United States." That Justice Terrell, the writer of the opinion, was of the view that those facts were necessary and important to the opinion and decision in that case is clearly reflected by the manner in which the facts are recited in the opinion distinguishing Reid v. Barry, supra, and by the statement by which he concluded, viz: "Overlooking this, the Chancellor fell into error."[21]
Because they are factually dissimilar, albeit church property schisms and disputes are involved, the other cases relied upon by appellees[22] are also inapplicable.
Appellants also persuasively argue that facts and law are separate and distinct and that although numerous cases involving Presbyterian churches have recited that they are hierarchical rather than congregational in structure such determination is not law but is factual and therefore dependent upon the evidence adduced in a particular case. Certainly we agree that whether a particular church, whatever its denomination, *267 is hierarchical or congregational is a matter of fact and not of law and a matter of which a court may not properly take judicial notice. However, although we are fully cognizant that substantial evidence was adduced in the case sub judice tending and intended to prove that the Madison Presbyterian Church at Madison, Florida is congregational rather than hierarchical or ecclesiastical, we do not find it necessary, because of our resolution of the case on the other grounds already announced, to wander into that thicket.
For the same reason it is unnecessary for us to address appellants' fourth point by which they urge that the trial court impermissibly and unconstitutionally admitted into evidence, considered and relied upon ecclesiastical pronouncements, declarations and documents, a substantial number of which are referred to in the final judgment here appealed.
Having determined that under the evidence of this case the property of the Madison Presbyterian Church at Madison, Florida is not impressed with any trust, implied or express, it necessarily follows that title and right of control are in the representatives of the local church, the appellant Trustees,[23] and that the representatives of the hierarchy of the PCUS, the appellees here, have no interest therein.[24]
REVERSED AND REMANDED with directions to enter judgment in favor of the defendants in the trial court, appellants here, not inconsistent with the views herein expressed.
RAWLS, J., concurs.
SMITH, J., dissents.
SMITH, Judge, dissenting:
In my judgment the majority decision departs from the well-settled rule of Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871) and St. Johns Presbytery v. Central Presbyterian Church, 102 So.2d 714 (Fla. 1958).
We are considering several deeds unto the "Trustees of the Presbyterian Church at Madison" and the "Trustees of the Madison Presbyterian Church of Madison." We are also considering bank accounts, securities and personal property owned and held by "the Madison Presbyterian Church." Our task here, at least in part, is to identify the congregation which is "the Presbyterian Church at Madison." My colleagues point approvingly to "the representatives of the local church," meaning appellants, but they do not demonstrate that appellants and their allies, rather than appellees Ragans and Beck and theirs, are that "local church." Their decision contradicts that of the ecclesiastical courts of the Presbyterian Church in the United States (PCUS), to whose authority all these persons have until recently submitted, which have identified the Presbyterian Church at Madison as the congregation here represented by appellees Ragans and Beck.
In a hierarchical organization such as PCUS  there being no basis in law or fact to disturb the chancellor's finding that *268 PCUS is indeed hierarchical  authority to identify the local congregation is in the hierarchy. Contrary to the explicit command of the First Amendment, as made applicable to the States by the Fourteenth, the majority here undertake to overrule, as a matter of civil law, PCUS' determination of that purely ecclesiastical matter. If a majority of the Madison congregation may declare themselves free of allegiance to PCUS and, as the seceded "local congregation", make their claims to church property effective by mandate of a civil court, then every such majority's secession with property would succeed. The distinction between congregational and hierarchical churches, long recognized by the churches themselves, by all their members, and by volumes of law would be rendered meaningless. I believe the majority's decision accomplishes just that, contrary to Watson v. Jones:
"... [W]e think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them." 80 U.S. (13 Wall.) at 727, 20 L.Ed. at 676;
and contrary to St. Johns Presbytery:
"It matters not whether those who withdraw from the mother church constitute a majority or a minority faction, the church property remains with the mother church. There are exceptions to this rule when the schism occurs in a church whose government is congregational in form like the Baptist or Congregational denominations but in churches bound together by associated ecclesiastical government when the local church is obedient to a larger or more important religious organization and is governed by it, such as the Presbyterian, Catholic, Episcopal, Methodist and Lutheran, I have found no exception to this rule. They could not function under any other rule." 102 So.2d at 718.
Attempting to distinguish their decision from the great number of cases holding that a local group may not withdraw from a hierarchical religious body and convert church property to its own use, the majority give controlling effect to the fact that one parcel of land was acquired in the name and for the use of the Madison Presbyterian Church in 1851, before the congregation's affiliation with PCUS. No implied trust in favor of PCUS could attach to the property at conveyance, the majority reason, because PCUS was not then in existence. Further, the majority discern no "subsequent document nor understanding" dedicating the church property to the use and discipline of PCUS. That reasoning is unconvincing on several grounds:
First, the majority do not account for real property acquired by the Madison Presbyterian Church in 1931, 1947, 1950, and 1965, long after the congregation affiliated with PCUS in 1861, or for personal property acquired by the Church since that date. Under the majority's own analysis, any such property falls squarely within the recognized rule of Watson and St. Johns Presbytery, and would be subject to the control of the congregation recognized by PCUS. The majority neither recognizes nor reconciles the consequent need, according to their analysis, for a Solomonic division of the church property. Plainly, the majority's implication is that the disposition of all real and personal property acquired by the congregation since 1861 is controlled by its disposition of "the primary church property," meaning the land acquired in 1851. Though the main edifice of the church was and may now be constructed on that property, there is no legal basis, let alone an ecclesiastical one, for embodying "the church" or its congregation as that building.
Secondly, although Watson, St. Johns Presbytery and several other decisions involved property acquired by a congregation *269 after its affiliation with the hierarchical body, nothing in any of those opinions suggests that fact controls the outcome. Three of the cases dismissed by the majority as "factually dissimilar" give no indication whether the property was acquired before or after the congregation's affiliation with the hierarchical body. Froelich v. Rowley, 102 So.2d 720 (Fla. 1958); Ferguson v. Poitier, 306 So.2d 212 (Fla.4th DCA 1975); Adickes v. Adkins, 264 S.C. 394, 215 S.E.2d 442 (1975).
Finally, the majority's finding that there was no "understanding" affecting property between the congregation and PCUS ignores the character of the commitment made by the Madison Church when it affiliated with PCUS in 1861. Thereby, the Madison Presbyterian Church adopted the constitution of PCUS  the Confession of Faith and Book of Church Order  and submitted itself to the discipline and authority of the higher courts of PCUS. That commitment was total and without reservation. Nothing in it suggests a purpose to except any or all of the property here contested. In Reformed Bethanien Church v. Ochsner, 72 S.D. 150, 31 N.W.2d 249 (1948), the Supreme Court of South Dakota dealt with contentions similar to those adopted here by the majority. There, as here, the "local congregation"  the Reformed Bethanien Church in Scotland, South Dakota  acquired land for a church building before affiliating with the hierarchical church with which it later contended. There, as here, it was suggested that property acquired by the Scotland congregation prior to affiliation with the Reformed Church was exempt from the congregation's commitment to the authority of the church at large, and so was subject to the later claims of a majority of the local congregation. The court rejected that contention, holding:
"We perceive no reason for arriving at a different conclusion with reference to property held by the local unit prior to its affiliation. In the absence of a specific understanding or agreement preserving a separate entity and expressing an intention to withhold its property, we think it must be presumed that by voluntarily merging itself as an organ of the larger body, it intended to dedicate its all to the purposes of that body. Such existence as it has had since this fusion is as but a part or member of a whole, and that which is held by or for it is held by or for the whole." 72 S.D. at 159-60, 31 N.W.2d at 254.
I conceive that the Madison congregation also committed "its all" to the authority and discipline of the Presbyterian Church in the United States.
In 1861 and for a time afterwards, it might well have been argued, as the majority here suggests, text at n. 16, that the Madison congregation's withdrawal from the Presbyterian Church in the United States of America (PCUSA) was ineffective to deprive that hierarchical church, and any remaining congregation in Madison which was loyal to it, of the beneficial use and ownership of the Madison church property. Surely the claims of PCUSA at that time were quite as legitimate, under the Watson rule, as those of PCUS today. Obviously the potential claim of PCUSA was frustrated by the ravages of a great war, PCUSA's consequent lack of access to a judicial remedy and the absence in Madison of a loyal congregation. Whatever may have been the merits of PCUSA's latent claim 116 years ago, it is now barred. The work and faith of successive generations of Madison Presbyterians born or converted to, baptized and married in, and buried from the Madison church long ago legitimated the 1861 commitment of the congregation and its property to the doctrine and authority of PCUS. Norton v. Jones, 83 Fla. 81, 90 So. 854 (1922); Greek Catholic Church of St. Michaels v. Archbishop Platon Roizdestvensky, 67 Colo. 217, 184 P. 295, 18 A.L.R. 690 (1919). Cf. Van Meter v. Kelsey, 91 So.2d 327 (Fla. 1956).
In short, I believe the chancellor was correct in holding:
"When the individual Defendants [appellants] withdrew from the Presbyterian Church US and organized themselves into *270 a separate and independent organization, they carried nothing but their membership with them, and the property remained with the Presbyterian Church US through its respective courts."
I would affirm.
NOTES
[1] Robert M. Healy, Jefferson on Religion in Public Education, 130 et seq. (1962).
[2] See Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, U.S.S.C. 1969, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658.
[3] The term "Presbyterian Church", as the evidence in this case demonstrates, has meant different things at different times and is not readily susceptible to specific definition. There are now approximately eight Presbyterian denominations in the United States with varying constitutions and governmental structures.
[4] The Presbytery did in the 1870's make minimal payments toward the Pastor's salary for time he devoted to ministering to another church.
[5] 74 in favor and 29 opposed.
[6] The parties have stipulated that appellants Bruce M. Bryan, Julian DuRant, Julian Gibson, Theodore Gibson, A.L. Hughes, and Kirby Reichmann constituted a majority of the Session of the Madison Presbyterian Church, elected by a majority of the congregation of said church, at the time of the actions complained of by plaintiffs (appellees) in this case. They also stipulated that at the time of the actions complained of by the plaintiffs the defendants (appellants here) Bruce M. Bryan, Julian DuRant, Julian Gibson, A.L. Hughes and Kirby Reichmann constituted a majority of the Trustees of the Madison Presbyterian Church, elected by a majority of the congregation of said church.
[7] Ross v. Gerung, 69 So.2d 650 (Fla. 1954).
[8] Ibid.
[9] In the adjudicatory portion of the final judgment here appealed the trial judge stated "IT IS THEREFORE, ORDERED AND ADJUDGED that the title and possession of the real property hereinabove described is in the Madison Presbyterian Church in Madison, Florida, subject to an implied trust for the use and benefit of the Presbyterian Church in the United States."
[10] The parties stipulated that the Walnut Street Presbyterian Church in Louisville, Kentucky over which the litigation occurred in Watson v. Jones was a Presbyterian church which was a congregation of the Presbyterian Church in the United States of America (PCUSA) and that said Walnut Street Presbyterian Church was not, at the time said case was litigated, subject to the government and discipline of the Presbyterian Church of the United States (PCUS).
[11] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[12] 393 U.S. at 450, 89 S.Ct. at 607.
[13] 393 U.S. at 449, 89 S.Ct. 601.
[14] On remand, the Georgia Supreme Court, finding that the departure-from-doctrine was an essential element of Georgia's implied trust doctrine, held that since the departure-from-doctrine was invalid, the entire implied trust doctrine must fail. Using neutral principles of law, specifically, an examination of the formal documents of title, the court concluded that title to the church property was vested in the local church. Presbyterian Church in United States v. Eastern Heights Presbyterian Church, 225 Ga. 259, 167 S.E.2d 658 (1969), cert. den., 396 U.S. 1041, 90 S.Ct. 680, 24 L.Ed.2d 685 (1970).
[15] It has also been stated by Justice Brennan, in a concurring opinion joined by two other Justices, that the implied trust doctrine was one of the three permissible approaches for settling church property disputes, so long as there was no consideration of doctrinal matters, whether ritual and liturgy of worship or tenets of faith. Maryland and V. Eldership of Churches of God v. Church of God at Sharpsburg, Inc., 396 U.S. 367, 368, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970).
[16] It is interesting to note that PCUS itself is an organization which was founded upon the principle of unilateral withdrawal from a denomination, having been founded by dissenters, the Presbytery of Florida among them, which, as previously mentioned, unilaterally withdrew in 1861.
[17] St. Johns Presbytery v. Central Presbyterian Church, 102 So.2d 714 (Fla. 1958).
[18] Reid v. Barry, 93 Fla. 849, 112 So. 846 (Fla. 1927).
[19] So states the author of the opinion.
[20] 80 U.S. (13 Wall.) at page 683.
[21] 102 So.2d 719.
[22] Presbytery of the Everglades v. Morgan, 125 So.2d 762 (Fla.3d DCA 1961); Froelich v. Rowley, 102 So.2d 720 (Fla. 1958); Nealey v. Butler, 187 So.2d 658 (Fla.3rd DCA 1966); First Continuing Presbyterian Church of Wauchula, Florida, Inc. v. Westminister Presbytery, 316 So.2d 663 (Fla.2d DCA 1975); Ferguson v. Poitier, 306 So.2d 212 (Fla.4th DCA 1975) and Adickes v. Adkins, 264 S.C. 394, 215 S.E.2d 442 (1975).
[23] See Presbyterian Ch. In U.S. v. Eastern Heights Pres. Ch., 225 Ga. 259, 167 S.E.2d 658 (1969), wherein that court determined the place of title of church property after holding the property to be free of an implied trust following remand by the United States Supreme Court in Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, supra. As stated in Footnote (14) supra, certiorari was denied by the United States Supreme Court at 396 U.S. 1041, 90 S.Ct. 680, 24 L.Ed.2d 685 (1970). Consideration of the holding of that case leads to the conclusion that since Erie R. Co. v. Tompkins, supra, the implied trust doctrine announced in Watson v. Jones, supra, is not "commonlaw" binding on the states but that whether a state adheres to such theory is a matter to be decided by the courts or legislature of the states involved.

For a complete discussion of the current status of the implied trust doctrine in Florida and the remainder of the United States, please see the annotation found at 52 A.L.R.3d 324.
[24] As elsewhere recited in this opinion, the basis of the plaintiffs' cause of action was an alleged "trust originally imposed upon said property" and, as recited in Footnote (9) above, such was the foundation of the Final Judgment here appealed: That basis and foundation having failed, reversal is required.