THOMAS, Justice.
The Polish National Catholic Church Western Diocese, Right Reverend Joseph Kardas, bishop, and Reverend S. Gogul, priest, filed suit against Reverend Felix Rekas and the other appellants to enjoin them from acting as pastor and parish committee, respectively, from disposing of any of the church property or transferring any of it, from acting in behalf of Holy Cross Church in the collection of monies, from holding services on the premises, from interfering with the use of the church property, from harrassing the appellee — Reverend S. Gogul or impeding him in discharging his duties as pastor, and so on.
It seems fitting to give at the outset a brief history of the Ploly Cross Polish National Catholic Church before proceeding to a study of the decree eventually entered and appellants’ objection to it. As the name implies the Holy Cross Church was an affiliate of the Polish National Catholic Church. It was situated in Dade County and was pastored by appellant — Reverend Felix Rekas. This minister and the members of the church committee were suspended by appellee — Right Reverend Joseph Kardas in accordance with, as the chancellor found, the laws and regulations of the parent body. The bishop named appellee— Reverend S. Gogul to succeed Reverend Rekas.
Then came the schism.
Reverend Rekas and the members of the church committee refused to relinquish their positions or to deliver to their successors the assets and physical property of the church. About three-fourths of the members of the church defected while one fourth remained loyal to the bishop and the national church.
After this litigation was instituted the majority group held a meeting at which it was agreed to amend the charter of the non-profit corporation, Holy Cross Polish National Catholic Church, holding title to the church property, so that they would be permitted to affiliate with any other church of their choice.
The chancellor ruled in favor of the plaintiffs, now appellees, permanently enjoining the dissenters from using the name “Holy Cross Polish National Catholic Church”; holding that all the property in its name belonged to the “Polish National Catholic Church” for the use and benefit of church members who continue in harmony with the concepts, beliefs and orders of *706 the national organization and its representative for the western diocese, appellee— Right Reverend Joseph Kardas, bishop; ruling that members who wished to withdraw could take away only their membership, but none of the church property; enjoining the deposed priest from functioning as the parish priest and requiring him to deliver to his successor the church property he possessed; and ordering him to vacate. In the decree were incorporated similar appropriate provisions with reference to the church committee.
The amendment to which we have referred was a very substantial one. Article II of the corporate charter had originally read: “The general nature of the objects o-f said corporation will be for the purpose of religious worship, and for carrying on of such other church functions that the congregation may deem necessary and proper; to acquire, mortgage and sell property or properties in connection with its functions as a religious corporation; all of the above in accordance with and subject to the jurisdiction of the Polish National Catholic Church as set forth in the Constitution and By-Laws of the Polish National Catholic Church as adopted by various synods of said church." We have italicized the language we consider significant.
When the insurgents, 75% of the congregation, finished amending this section, after this suit was started, it read: “* * *
This corporation shall have the right to affiliate with any national church upon a two-thirds vote of its entire membership.” (Emphasis supplied.)
It seems at this point that the parties attempted to make their secession effective by the simple process of amending the charter. They could not thus cut the umbilical cord connecting the Holy Cross with the mother church much less take the church with them, so to speak, when they departed.
The bishop of the diocese seems to have acted within the authority of the constitution of the national church when he suspended the priest and the committee. This constitution had been adopted by the synod of the national church and it is obvious from the quoted part of the charter of the local church that it recognized the jurisdiction of the parent body.
We think the solution of the current problem may be found in our decisions in First Born Church of the Living God v. The First Born Church of the Living God, 156 Fla. 78, 22 So.2d 452, and Full Gospel Temple of Tallahassee v. Redd, Fla., 82 So. 2d 589. It is clear to us that the polity of the church is episcopal as were the forms of government of the churches involved in the cited cases and we conclude that those holdings impel us to the view that the defiance of authority evinced by the appellant-secessionists should not be condoned and that the actions attempted by them to accomplish their purpose were properly halted by the chancellor. His orders both mandatory and preventive were entirely proper.
The entire decree is—
Affirmed.
TERRELL, C. J., and ROBERTS, THORNAL and O’CONNELL, JJ., concur.