**DUNCAN, et al v. WATTERSON, et al.**
No. 77-3926 CA(L)01 K.
Circuit Court, Palm Beach County.
February 21, 1979.

W. Peter Burns, Palm Beach, for the plaintiff.

Richard E. Clark, North Palm Beach, for the defendant.

R. WILLIAM RUTTER, Jr., Circuit Judge.

*Final judgment:* This cause was tried before the court following the entry of a pretrial stipulation and the agreement to admission into evidence of numerous documents in addition to the oral testimony of witnesses. The case involves a dispute between two groups

contending for control of the property of the defendant, Church of the Holy Spirit, Inc., hereinafter sometimes referred to as Holy Spirit, a Florida corporation not-for-profit, which had been an Episcopal church parish in West Palm Beach since approximately 1954. The plaintiffs are the group which has remained loyal to the Episcopal Church and includes the Episcopal Bishop of the Diocese of Southeast Florida, the diocese itself, and certain members of the Church of the Holy Spirit who have remained loyal to the Episcopal Church, all suing on behalf of themselves and all others similarly situated. The defendants are the group which has left the Episcopal Church and is comprised of the former rector of the Church of the Holy Spirit and other members of the Church of the Holy Spirit who have left the Episcopal Church.

Initially, it is important that the court acknowledge the establishment and free exercise clauses of the First Amendment to the United States Constitution. This court has been presented with a case which, upon consideration of the parties involved and the general subject matter of the case, it becomes apparent that the court must proceed cautiously in order not to stray into the protected areas provided by the First Amendment. This can be done only by avoiding the consideration of ecclesiastical matters while limiting the matters under consideration solely to those legal questions surrounding the property of the Church of the Holy Spirit, Inc., and the determination of whether plaintiffs or defendants are the proper representatives of the corporation entitled to the use of such property. In arriving at this decision, it is incumbent on the parties to understand that this court is in no way passing judgment upon the philosophical differences which have led to the schism between the two groups.

On the evidence presented, it is adjudged that the plaintiff, Rt. Rev. James L. Duncan, is Bishop of the Diocese of Southeast Florida, of the Protestant Episcopal Church in the United States of America, and as such, is the Ecclesiastical Authority of such church in said diocese and is the president of the Diocese of Southeast Florida, Inc. The Diocese of Southeast Florida, Inc. is a not-for-profit corporation organized under the laws of Florida and is the corporate form of the Diocese of Southeast Florida of the Protestant Episcopal Church in the United States of America. The Diocese of Southeast Florida was formed upon the division of the Diocese of South Florida into three dioceses, and the Diocese of Southeast Florida, Inc. is the successor corporation to the Trustees of the Diocese of South Florida, a corporation, as to the powers and authority formerly exercised by the Trustees of the Diocese of South Florida in several southeast Florida counties, including Palm Beach County. The Diocese of Southeast Florida functions

under the constitution and canons of the Protestant Episcopal Church in the United States of America, and the constitution and canons of the Diocese of Southeast Florida. The Protestant Episcopal Church in the United States of America is governed by a General Convention, composed of a House of Bishops and a House of Deputies and headed by a Presiding Bishop.

The defendant Church of the Holy Spirit, Inc. is a Florida not-for-profit corporation, which is and for many years has been the corporate form of the Protestant Episcopal Church parish located at 1003 Allendale Road, West Palm Beach, and known as "The Church of the Holy Spirit." Since its inception, such church or parish has always been a part of the Diocese of Southeast Florida and its predecessor, the Diocese of South Florida, and of the Protestant Episcopal Church in the United States of America, first as a mission church and subsequently as a regularly constituted parish church.

The Church of the Holy Spirit, Inc. was chartered in 1954 and amended in 1958 as a corporation not-for-profit under the laws of Florida. Until October 2, 1977 the corporation, its members, the parish and its priests actively and affirmatively participated in diocesean and national conventions of the Protestant Episcopal Church in the United States of America. Defendant, Rev. Peter F. Watterson, was assigned to Holy Spirit as a missionary priest in 1958 by the then Ecclesiastical Authority and became rector of the Holy Spirit in 1960, when it attained parish status. He is currently inhibited as of October 11, 1977, from officiating as a priest of the Episcopal Church of the Diocese of Southeast Florida pursuant to Title IV, Canon 10, Section 1 of the constitution and canons of the Episcopal Church.

The defendant Church of the Holy Spirit, Inc. is record title owner of certain real property in West Palm Beach, Palm Beach County, to wit —

[legal description omitted]

together with all buildings, appurtenances, and improvements thereon including the church building, parish hall, rectory and related facilities. Holy Spirit also owns personal property, including furnishings, memorials, vestments, etc., of both a secular and an ecclesiastical nature.

The lay defendants were members of the governing body of the group now in physical possession of the property of the Church of the Holy Spirit at the time the complaint was filed and are fair and adequate representatives of all members of the group, totaling approximately 185 members, which has sought to sever the ties between the group and the Protestant Episcopal Church in the United States of America.

Prior to a charter amendment of October 2, 1977, Article XIII of the Holy Spirit's charter prohibited the encumbrance or sale of Holy Spirit's real property without the consent of the Trustees of the Diocese of South Florida.

Prior to a charter amendment of October 2, 1977, Article VIII of the Holy Spirit's charter provided that the by-laws of the corporation could not be inconsistent with the canons of the Episcopal Church in the United States of America and in Diocese of South Florida, nor with the articles of incorporation of the Holy Spirit.

Prior to a charter amendment of October 2, 1977, Article XII of Holy Spirit's charter prohibited amendment of the charter without the consent of the bishop and the standing committee of the diocese.

The defendant, Rev. Peter F. Watterson, and some members of the Holy Spirit declared their unwillingness to accept the decision of the General Convention of the Protestant Episcopal Church in the United States of America which permitted the ordination of women as priests and other decisions of the church. They were further dissatisfied with statements and actions of some individual members and bishops of the Protestant Episcopal Church in the United States of America on other controversial issues. As a result of their dissatisfactions, on October 2, 1977, certain members of the Holy Spirit, including the lay defendants and the class they represent, at a special meeting of the Church of the Holy Spirit voted to change the Holy Spirit's charter by, inter alia, deleting all references to the Protestant Episcopal Church in the United States of America and the Trustees of the Diocese of South Florida, and authorizing the entering into communion with a new Ecclesiastical Authority of their own selection. This action was taken without the consent of the bishop and standing committee of the Diocese of Southeast Florida in spite of letters from the bishop of Southeast Florida directed to Holy Spirit both before and after the meeting stating that he would decline to approve the charter amendments voted on at the October 2, 1977, meeting if submitted to him.

On October 11, 1977, plaintiff, Rt. Rev. James L. Duncan, in his capacity as the Ecclesiastical Authority to the Diocese of Southeast Florida, inhibited the defendant, Rev. Peter F. Watterson, from officiating as a protestant episcopal priest in the diocese of Southeast Florida for a six months period.

The plaintiff, Rt. Rev. James L. Duncan, in his capacity as the Ecclesiastical Authority in the Diocese of Southeast Florida, by letter dated October 19, 1977, declared that all members of the Church of the Holy Spirit who voted at the October 2, 1977, meeting to amend the Holy Spirit's charter and to enter into communion

with another ecclesiastical body, were not communicants in good standing of the Protestant Episcopal Church in the United States of America and were not eligible to be electors of the Holy Spirit.

On October 5, 1977 the plaintiff, Rt. Rev. James L. Duncan, appointed the Rev. Walter Neds as priest locum tenens to minister to the sacramental and pastoral needs of the members of Holy Spirit who remained within the Protestant Episcopal Church in the United States of America. Since that time, those members remaining loyal to the Protestant Episcopal Church in the United States of America have conducted their worship at a church several miles from the church property of the Holy Spirit, while the defendant, Rev. Peter F. Watterson, the lay defendants, and the members of the class they represent have remained in possession of the property of the Church of the Holy Spirit, Inc., and have used the property, including the personal property, for religious purposes other than communion with the Protestant Episcopal Church in the United States of America and the diocese of Southeast Florida.

A determination of whether the majority (defendants) who voted to and withdrew their affiliation from the Protestant Episcopal Church in the United States of America, or the minority (plaintiffs) who continued faithful to the Protestant Episcopal Church in the United States of America, represent the Church of the Holy Spirit, Inc., and thus are entitled to ownership of the church property, requires a determination as to whether or not the Protestant Episcopal Church in the United States of America is a hierarchical church, and if so, wheher or not the "implied trust" doctrine is applicable to the property in question. Watson v. Jones, 80 U.S. 679 (1872); St. John's Presbytery v. Central Presbyterian Church of St. Petersburg, 102 So.2d 714 (Fla., 1958); Mills v. Baldwin, Florida Law Weekly, July, 1978, 362 So.2d 2.

The Episcopal Church is governed by a General Convention consisting of a House of Bishops and a House of Deputies and headed by a presiding bishop. Individual dioceses are headed by bishops and governed by their own constitution and canons subject to the constitution and canons of the National Church. Local parishes are part of and are subject to the constitution and canons of the National Church and of the diocese in which they are located. No local congregation or parish has direct membership in the Episcopal Church but rather is a member of the Episcopal Church through its membership in the diocese. The Church of the Holy Spirit was founded under the auspices of Holy Trinity Episcopal Church, and it is clear from the testimony and documentary evidence that the founders of Holy Spirit intended it to be a constituent part of the Episcopal Church. The charter of the Holy Spirit approved in 1954 and amended in January of 1958 provided as follows —

## ARTICLE II

The general nature of the object of the corporation is the support of the public worship of Almighty God, according to the faith and discipline of The Protestant Episcopal Church in the United States of America, and of The Protestant Episcopal Church in the Diocese of South Florida. It acknowledges itself to be a member of and to belong to the said Church in the Diocese of South Florida. As such it accedes to, recognizes and adopts the constitution, canons, doctrine, discipline and worship of The Protestant Episcopal Church in the United States of America, and the constitution and canons of The Protestant Episcopal Church in the Diocese of South Florida.

## ARTICLE III

The members of the corporation shall all be such members of the corporation as may be qualified voters at parish elections for Vestrymen under the canons of The Protestant Episcopal Church regulating the subject in the Diocese of South Florida and said members shall be entitled to vote upon all questions which may properly come before any meeting of the congregation.

No person who shall disclaim or refuse conformity with and obedience to the constitution, canons, doctrine or worship of The Protestant Episcopal Church in the United States of America or of The Protestant Episcopal Church in the Diocese of South Florida shall be a member of this corporation or eligible for membership therein; nor shall any such person vote for Vestrymen or be appointed or elected a member of the Church Committee or Vestry, or exercise any function in, concerning or connected with this corporation.

Additionally, Holy Spirit's application to the Diocese for parish status in February, 1958, included the following —

We declare our conformity to the Doctrine, Discipline, and Worship of the Protestant Episcopal Church in the United States of America, and promise obedience to the Constitution and Canons set forth by the General Convention, and to the Constitution and Canons of this Diocese.

The National Church sets the standards for worship practices of the church, and the book of common prayer governs the local worship. There is some latitude at the local level regarding the usage of the book of common prayer, but there are certain requirements and prohibitions which must be adhered to. The bishop, as the local representative of the National Church, has the canonical authority to visit congregations within his jurisdiction for the purpose of examining their conditions, inspecting the behavior of their clergy, administering confirmation, preaching the Word, and celebrating the sacrament of the Lord's Supper, and to address to the people of his jurisdiction pastoral letters on points of Christian doctrine, worship, or manners and to require the clergy to read the same to their congregations. While the National Church

sets standards for its clergy, the bishop has the authority to ordain deacons and priests and to take part in and discipline a priest or deacon within the diocese who has been subjected to an ecclesiastical trial. While there is no requirement under the constitution and canons of the diocese for the local church to own its property in trust for either the diocese or the National Church, the Constitution and canons of the diocese and the Holy Spirit's charter prior to October, 1977, did prohibit the encumbering, selling, alienating, transferring or conveying any real property held by or for the parish without the consent of the trustees of the diocese.

Based upon the foregoing, the court finds that the Episcopal Church is a hierarchical church, Watson v. Jones, supra; St. John's Presbytery v. Central Presbyterian Church of St. Petersburg, supra; Mills v. Baldwin, supra, and the next determination is whether or not the "implied trust" doctrine applies to the Holy Spirit's property.

The real property to which the Church of the Holy Spirit, Inc., holds title has come from several sources. Annie B. Beach gave approximately one acre to the trustees of the diocese of South Florida for the establishment of Holy Spirit as a parish. This property was transferred by the trustees of Holy Trinity Church, which later transferred the property to Holy Spirit since Holy Spirit was being founded under the auspices of Holy Trinity. Other property was transferred from Holy Trinity to Holy Spirit, and some property was transferred directly to Holy Spirit by the Brumbys and the Spencers. It should also be noted that the diocese approved the conveying of the property from Holy Trinity to Holy Spirit as required by the constitution and canons of the diocese. From the time of acquisition of the various pieces of real property which now comprise the entire amount of real property owned by the Church of the Holy Spirit, Inc., until October 2, 1977, there was compliance with the constitution and canons of the diocese and Holy Spirit's charter relating to the encumbering and selling of church property. From the conveyance of the first property to the Church of the Holy Spirit, Inc., and Holy Spirit's compliance with the constitution and canons of the diocese regarding selling and encumbering of real property until October, 1977, it is apparent that the intention was that the church property would be used for those who conform with and who are obedient to the constitution, canons, doctrine or worship of the Protestant Episcopal Church in the United States of America and the diocese of Southeast Florida.

It further appears that the proper representative of the hierarchy of the Episcopal Church, the Rt. Rev. James L. Duncan, has determined that the lay plaintiffs who have remained within the Protestant Episcopal Church in the United States of America and

not the Rev. Peter F. Watterson or the lay defendants and the class they represent are entitled to the use and possession of the local church's property.

In view of the intent as previously stated and the determination by the bishop, it is clear that based upon the previously cited authorities, the property of the Church of the Holy Spirit, Inc. is encumbered with an "implied trust" in favor of the Protestant Episcopal Church in the United States of America, which limits the use, ownership and possession of the property to the plaintiffs and the diocese of Southeast Florida, as beneficiaries of the implied trust. St. John's Presbytery v. Central Presbyterian Church, supra—

> This is an abounding array of authorities but they all treat some phase of litigation growing out of church schisms in which both factions lay claim to the church property. When the church is representative, republican or episcopal in goverment, the authorities uniformly hold that the church property whether held by an express or an implied trust cannot be diverted from the parent church by those who withdraw from it and form a separate denomination. It matters not whether those who withdraw from the mother church constitute a majority or a minority faction, the church property remains with the mother church. There are exceptions to this rule when the schism occurs in a church whose government is congregational in form like the Baptist or Congregational denominations but in churches bound together by associated ecclesiastical government when the local church is obedient to a larger or more important religious organization and is governed by it, such as the Presbyterian, Catholic, Episcopal, Methodist and Lutheran, I have found no exception to this rule. They could not function under any other rule. [At page 718]

The October 2, 1977 amendment of the charter of the Church of the Holy Spirit, Inc. constituted significant variances from the previous charter which provided in Section XII thereof that the charter could be amended at a meeting of the lay members of the corporation, subject to final approval by the bishop and standing committee of the diocese. The proposition was advanced that Section 617.02, Florida Statutes, provides for the means of amendment of the charter of a not-for-profit corporation and allows amendment of such a corporation which has not been reincorporated under Section 617.012 (as exists in this case) by compliance with the corporation's by-laws rather than the articles themselves. The provisions of the charter, prior to October 2, 1977, relating to the by-laws is found in Article VIII as follows —

> "The by-laws of the corporation *(which must not be inconsistent with the canons aforesaid nor with these Articles of Incorporation)* are to be made, altered or rescinded by the Church Committee or Vestry." [Emphasis added]

Prior to October 2, 1977, Article XII of the charter read as follows —

> "This charter may be amended at a meeting of the lay members of the corporation, and if approved by a majority of the members present and voting, *the amendment shall be submitted to the Bishop and to the Standing Committee of the Diocese,* and if it be approved by them, it shall be and form part of the charter upon the consequent confirmation thereof by the court having jurisdiction and its recording according to the law." [Emphasis added]

As can be seen from these two provisions of the charter, at the time the purported amendments were made on October 2, 1977, it was necessary that the by-laws of the corporation be consistent with the canons of the Episcopal Church in the United States of America and in the diocese as well as with the articles of incorporation of Holy Spirit. It likewise was required that the bishop and standing committee of the diocese approve any amendments to the charter. While the statutory provisions would provide for an amendment of the charter by adherence to the by-laws, it is apparent that at the time of the purported amendment the by-laws were consistent with the existing charter, and in order for the amendments to the charter to be effective it was necessary to secure the consent of the bishop and standing committee of the diocese. Since these purported amendments were not approved by the bishop and standing committee of the diocese, they are declared void.

Even if such amendments had complied with the Florida Statutes and the by-laws and charter of Holy Spirit, such a bootstrap attempt to gain control over the property would be prohibited as was done by the Florida Supreme Court in Rekas v. Polish National Catholic Church, Western Diocese, 102 So.2d 705 (Fla., 1958), where the court stated —

> "It seems at this point that the parties attempted to make their secession effective by the simple process of amending the charter. They could not thus cut the umbilical cord connecting the Holy Cross with the mother church much less take the church with them, so to speak, when they departed." [At page 706]

Therefore, the attempted charter amendments were ineffective, and the 1954 Charter of the Holy Spirit, as amended in 1958, is still in full force and effect.

In view of the finding of this court that the plaintiffs are entitled to possession of the local church's property, including all personal

property of Holy Spirit, plaintiffs also are entitled to an inventory and accounting of all properties, real or personal, belonging to the Church of the Holy Spirit, Inc., and defendants are ordered to render within thirty days of this judgment an inventory and accounting of all property owned by Holy Spirit as of October 2, 1977, including any property which has been removed or dissipated, together with the proceeds of all property. It is further ordered that defendants are enjoined from alienating or converting to their own use any such property.

Defendants and all persons similarly situated are ordered within ten days of the date of this judgment to quit and surrender to the plaintiffs all property belonging to the Church of the Holy Spirit, Inc., and to cease all interference with the use by the plaintiffs of such property.

The court retains jurisdiction of this action to consider the taxation of costs upon the filing of proper motion and to enter such further orders as may be appropriate to carry out the provisions of this judgment.