COPE, Judge.
This is an appeal from an order entering a temporary injunction in a dispute regarding internal church governance in a hierarchical church. We reverse.
Reverend George E. Poulos, Jr., was the minister of Christ the King Evangelical Lutheran Church. The Church is a member of the Evangelical Lutheran Church in America, a national church body. The national church is hierarchically organized. It is divided into regions, referred to as Synods, each Synod being led by a Bishop. Each Synod is in turn divided into Conferences, each Conference being headed by a Dean. Within each conference are the individual churches.
Each individual church has a Church Council, which serves as its local governing body. The individual appellants, with the exception of appellant Lavern G. Franzen, are members of the Church Council of Christ the King Church.[1] Appellant Fran-zen is Bishop of the Florida Synod of the Evangelical Lutheran Church in America.
In 1991 the Church Council by majority vote referred certain allegations about Reverend Poulos to the Synod and Bishop Franzen for investigation. After investigation, a meeting of the entire congregation of the local church was scheduled for October 13, 1991. At this congregational meeting the Bishop was to present recommendations for resolution of the internal church dispute. A vote was also to be taken regarding the question whether Reverend Poulos should be retained in his position of minister of Christ The King Church. The Bishop established ground rules for determining who, under the Church and Synod Constitutions, would be eligible to vote.
Reverend Poulos authorized the filing of a lawsuit against the Church Council members, alleging that the Church Council had not followed provisions of the Church’s Constitution in forwarding allegations about Reverend Poulos to the Bishop. Bishop Franzen and the Florida Synod intervened on the side of the Church Council.[2]
A hearing was held on plaintiffs motion for temporary injunction on Tuesday, October 8, 1991, at which time plaintiff sought to enjoin all of the church proceedings and in particular to forestall the congregational meeting and vote scheduled for Sunday, October 13. Plaintiff argued, among other things, that the Church authorities might “pack” the congregation with persons not entitled to vote, thereby resulting in an outcome unfavorable to Reverend Poulos.
On Friday, October 11, 1991, the trial court entered an injunction which granted part of the relief sought. The court ruled that the congregational meeting could proceed on October 13, 1991, but that only those persons would be allowed to vote who were active voting members of the local church as of August 10, 1991.
The congregational meeting took place on October 13 under the restrictions prescribed by the trial court. Under the Church’s constitution, inactive church members were entitled to be reinstated to active status by performing one of two specified *1262 conditions in the Church Constitution.[3] The terms of the injunction excluded 39 persons from voting on October 13 who were otherwise entitled to vote under the terms of the Church Constitution. These 39 members cast ballots which were kept segregated and were tabulated separately.
The congregation voted on a motion to discharge Reverend Poulos as minister of the congregation. When the votes were tabulated under the restrictions imposed by the temporary injunction, the motion failed by two votes of attaining the required two-thirds majority. However, when the excluded 39 votes were added to the tabulation, the motion passed by more than the required two-thirds majority. Consequently, the temporary injunction affected the outcome of the October 13 voting.
Ten days after the vote, Reverend Poulos resigned effective as of November 24. Notwithstanding the resignation, Reverend Poulos has filed an amended complaint in which he seeks a declaratory judgment and other relief, contending that the Church failed to follow its own internal procedures with respect to the proceedings against him.
The threshold question is whether the instant appeal is moot, given that Reverend Poulos is no longer the minister at the Christ the King Church. We think that the matter is not moot. First, when the votes were tabulated using injunction-prescribed voter eligibility, the official action of the congregation fell short of that necessary to discharge Reverend Poulos, and necessarily reflects that Reverend Poulos was continued in his employment after October 13. If the vote is tabulated in accordance with the Church’s own Constitution and internal procedures, then the motion to discharge Reverend Poulos passed, resulting in a termination of his employment. Practical consequences flow from a determination of that issue, notwithstanding that Reverend Poulos is no longer employed at the Church.
Second, the question presented here is capable of repetition, yet evading review. The injunction in this case was entered on the eve of the congregational meeting, under circumstances which rendered it impossible to obtain pre-meeting appellate review. Such short notice is not unusual in internal governance disputes. For both reasons we decline to treat the appeal as moot.
Turning to the merits, the temporary injunction should not have been issued. The trial court took the position that because the local Church is incorporated under Florida law, “the Court has jurisdiction over the subject matter of this case, and the members of the corporation.” Order, Oct. 11, 1991, para. 1. The court exercised that jurisdiction by deciding which persons would be entitled to vote at the October 13 meeting.
While the trial court is ordinarily empowered to adjudicate questions of Florida corporate law, a First Amendment exception applies to matters of internal governance of a hierarchical religious organization. As summarized by the Supreme Court:
In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.
Serbian Eastern Orthodox Diocese for U.S. of America and Canada v. Milivojevich, 426 U.S. 696, 724-25, 96 S.Ct. 2372, 2387-88, 49 L.Ed.2d 151, 171-72 (1976). See also Mills v. Baldwin, 362 So.2d 2 (Fla.1978), vacated, 443 U.S. 914, 99 S.Ct. 3105, 61 L.Ed.2d 878 (1979), reinstated, 377 So.2d 971 (Fla.1979) cert. denied 446 U.S. *1263 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980); Townsend v. Teagle, 467 So.2d 772 (Fla. 1st DCA) review denied 479 So.2d 118 (Fla.1985). The complaint and prayer for in-junctive relief in this case sought to inject the court into the internal governance of the Lutheran Church, a hierarchical religious organization of the type described in the Serbian Eastern Orthodox decision.
Reverend Poulos attempts to distinguish the Serbian Eastern Orthodox case by arguing that the Supreme Court decision applies only if a final decision has been rendered by the highest ecclesiastical authorities of the Church. Reverend Poulos argues that in the meantime, the trial court may intervene in the Church’s internal affairs. That is plainly not the case. As the Serbian Eastern Orthodox decision clearly indicates, the judiciary is obliged to defer to the hierarchical church’s internal deci-sional processes on matters of internal church discipline and government.
Reverend Poulos argues that the decision in Rekas v. Polish National Catholic Church, West. Diocese, 102 So.2d 705 (Fla.1958), is authority for entry of the injunction. Leaving aside the fact that the Serbian Eastern Orthodox decision controls to the extent of any inconsistency, Reverend Poulos misreads the Rekas decision. In Rekas the church hierarchy had rendered a decision regarding internal governance of the church, but the ousted pastor and ousted church faction refused to relinquish their positions and refused to turn over physical property of the church. 102 So.2d at 705. In that circumstance, the national hierarchy resorted to the courts as plaintiff in order to obtain judicial enforcement of the decision of the ecclesiastical hierarchy. That case is consistent with the Serbian Eastern Orthodox decision. The other cases relied on by Reverend Poulos are inapposite.[4]
For the foregoing reasons, the temporary injunction must be reversed. Although the injunction order is the only issue now before us, we note that the reasons requiring reversal of the injunction will also require dismissal of plaintiff’s action. See Affolter v. Virginia Key Marina, 601 So.2d 1296 (Fla.3d DCA 1992).
Reversed.

. Those appellants are Raymond Adams, Andrew Anderson, Nancy Beck, Carolyn Bartholomew, Clarence Cook, Michael Goulet, William Higgins, Donna Schmidt, James Shafer, Neil Shelley, and Albert Wellens.

. The original plaintiff was Christ the King Church. Soon thereafter, Reverend Poulos joined the suit as an additional plaintiff and was, in our view, the real party in interest. The Church authorities concluded that Reverend Poulos had no authority to file the lawsuit on behalf of the Church and the Church has been voluntarily dismissed as plaintiff.

. This could be done either by the inactive member’s taking communion or by making a contribution to the church.

. Reverend Poulos relies on Epperson v. Myers, 58 So.2d 150 (Fla.1952); Hemphill v. Zion Hope Primitive Baptist Church of Pensacola, Inc., 447 So.2d 976 (Fla. 1st DCA 1984); Covington v. Bowers, 442 So.2d 1068 (Fla. 1st DCA 1983); Umberger v. Johns, 363 So.2d 63 (Fla. 1st DCA 1978); and Rolle v. Judge, 310 So.2d 42 (Fla. 4th DCA) cert. denied 324 So.2d 633 (Fla.1975). Those decisions involve independent congregations which are not part of a hierarchical church organization.